NO. 07-06-0164-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



OCTOBER 4, 2007



______________________________




JEROD W. JONES, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2005-409401; HONORABLE JIM BOB DARNELL, JUDGE



_______________________________



Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

 Appellant, Jerod W. Jones, was convicted by a jury of aggravated assault,
enhanced. He was sentenced to fifty years confinement by the trial court. In challenging
his conviction, he presents three issues by which he maintains (1) the evidence is legally
and (2) factually insufficient to show that he intentionally, knowingly, or recklessly
committed aggravated assault with a deadly weapon by hitting Tanji Garcia with his vehicle
and (3) the trial court erred in overruling his objection to photographs of Garcia's injuries
based on Rule 403 of the Texas Rules of Evidence. We affirm.

 On the evening of May 19, 2005, Appellant, Chad Holmes, and Aaron Holmes 
decided to go to the Branch Office Bar and Grill to play pool. Appellant drove them there
in a black Ford truck he had borrowed from his girlfriend, Kelli Ortega. (1) When he arrived
at the bar, Appellant parked in the lot nearest the front of the bar. After entering the bar,
Chad ordered a beer and requested quarters to play pool, but was immediately turned
away after Appellant and a male patron exchanged words outside the bar.

 Juan Leroy Arriaga testified that he left the bar to go to his car for cigarettes when
"three dudes" "started running their mouth[s] and wanting to fight me . . . ." Arriaga went
back in the bar to find his brother, Junior. A group of people from the bar, the bar's owner,
and the bartender disbanded the group before any fighting broke out and asked Appellant
and his friends to leave. The confrontation occurred in the early morning hours of May
20th.

 Appellant and his friends drove to Appellant's mother's house. They were there
briefly before realizing that Aaron had left his sandals in the parking lot after removing them
in anticipation of a physical encounter. Aaron testified that except for his work shoes,
those sandals were the only other pair of shoes he owned and they decided to return to
the bar to retrieve them. This time, to avoid a conflict, Appellant parked the truck in a
shopping center parking lot located across the street from the bar.

 According to Chad and Aaron, they didn't get to search for the sandals because a
group (testimony indicates anywhere from six to fifteen persons) exited the bar and began
chasing them. They returned to the truck to drive away as the crowd was yelling and hitting
the truck. Appellant backed out of the parking space, drove over a curb, and ended up in
the bar's parking lot where he struck Tanji Garcia as she was walking toward her
boyfriend's car. 

 Appellant drove to Chad's apartment and parked the truck. Chad then drove
Appellant and Aaron home in his vehicle to avoid being spotted by anyone from the bar
who may have followed them. According to Chad and Aaron's testimony they did not
realize they had struck a pedestrian until it was reported on the news.

 Paramedics and law enforcement were called to the scene. According to a
paramedic, Garcia sustained severe injuries to her face. Police officers interviewed
witnesses and found an unopened beer can and a pair of flip flop sandals in the area. The
black truck driven by Appellant was located and hair strands matching Garcia's hair were
found in the right front bumper. Officers traced the truck to Kelli Ortega. She testified that
she was working that night and had lent her truck to Appellant. 

Standard of Review-Sufficiency of the Evidence


 By his first two issues, Appellant challenges both the legal and factual sufficiency
of the evidence to support his conviction. When both the legal and factual sufficiency of
the evidence are challenged, we must first determine whether the evidence is legally
sufficient to support the verdict. Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App.
1996). It is a fundamental rule of criminal law that one cannot be convicted of a crime
unless it is shown beyond a reasonable doubt that the defendant committed each element
of the alleged offense. U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. art. 38.03
(Vernon Supp. 2006); Tex. Penal Code Ann. § 2.01 (Vernon 2003). 

 Evidence is legally insufficient if, when viewed in a light most favorable to the
prosecution, a rational trier of fact could not have found each element of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789,
61 L.Ed.2d 560, 573 (1979); McKinney v. State, 207 S.W.3d 366, 374 (Tex.Crim.App.
2006). This standard is the same in both direct and circumstantial evidence cases. Burden
v. State, 55 S.W.3d 608, 613 (Tex.Crim.App. 2001). In measuring the legal sufficiency of
the evidence to sustain a conviction, we measure the elements of the offense as defined by
a hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App.
1997). This is done by considering all the evidence that was before the jury--whether
proper or improper--so that we can make an assessment from the jury's perspective. 
Miles v. State, 918 S.W.2d 511, 512 (Tex.Crim.App. 1996). As an appellate court, we may
not sit as a thirteenth juror, but must uphold the jury's verdict unless it is irrational or
unsupported by more than a "mere modicum" of evidence. Moreno v. State, 755 S.W.2d
866, 867 (Tex.Crim.App. 1988). 

 After conducting a legal sufficiency review under Jackson, we may proceed with a
factual sufficiency review. Clewis, 922 S.W.2d at 133. When conducting a factual
sufficiency review, we examine all the evidence in a neutral light and determine whether
the jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State,
144 S.W.3d 477, 484 (Tex.Crim.App. 2004), overruled in part by Watson v. State, 204
S.W.3d 404, 415-17 (Tex.Crim.App. 2006). We cannot reverse a conviction unless we find
some objective basis in the record that demonstrates that the great weight and
preponderance of the evidence contradicts the jury's verdict. Watson, 204 S.W.3d at 417. 
In other words, we cannot conclude that Appellant's conviction is "clearly wrong" or
"manifestly unjust" simply because we disagree with the jury's verdict. Id.; Cain v. State,
958 S.W.2d 404, 407 (Tex.Crim.App. 1997).

 A person commits an assault if the person either intentionally, knowingly, or
recklessly causes bodily injury to another. Tex. Penal Code Ann. § 22.01(a)(1). A person
commits an aggravated assault if the person commits an assault as defined in § 22.01 and
the person either causes serious bodily injury to another, or uses or exhibits a deadly
weapon during the commission of the assault. § 22.02(a). Thus the State was required
to prove that Appellant intentionally, knowingly, or recklessly caused serious bodily injury
to Garcia or used or exhibited a deadly weapon during the commission of the assault. (2)

 The evidence established that Appellant was driving the black Ford truck that struck
Garcia and caused severe facial injuries. Several police officers testified that the vehicle
Appellant was driving was capable of causing death or serious bodily injury. See §
1.07(a)(17)(B) (defining deadly weapon). Accordingly, Appellant challenges the sufficiency
of the evidence as it pertains to the element of intent and maintains that Garcia's injuries
were the result of a "terrible accident." 

 The court's charge included all three culpable mental states. Because the State
alleged all three theories of mental culpability, the evidence is sufficient to support
Appellant's conviction if it establishes that he acted with any one of three mental states
charged in the indictment. Rogers v. State, 774 S.W.2d 247, 251 (Tex.Crim.App. 1989),
cert. denied, 493 U.S. 984, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989), overruled on other
grounds, Peek v. State, 106 S.W.3d 72, 79 (2003); Paschal v. State, 35 S.W.3d 80
(Tex.App.-Texarkana 2000, no pet.). Thus, we will review the evidence to determine if it
is sufficient to establish that Appellant acted recklessly in causing Garcia's injuries. 

 A person acts recklessly, or is reckless, with respect to circumstances surrounding
his conduct or the result of his conduct when he is aware of but consciously disregards a
substantial and unjustifiable risk that the circumstances exist or the result will occur. §
6.03(c). The risk must be of such a nature and degree that its disregard constitutes a
gross deviation from the standard of care that an ordinary person would exercise under all
the circumstances as viewed from the actor's standpoint. Id. Whether a defendant
committed an offense with the requisite mental state is a question of fact to be determined
by the trier of fact from all the evidence presented. Hemphill v. State, 505 S.W.2d 560,
562 (Tex.Crim.App. 1974); State v. Hart, 905 S.W.2d 690, 693 (Tex.App.-Houston [14th
Dist.] 1995, pet. ref'd). A culpable mental state may be inferred from circumstantial
evidence such as acts, words, and the conduct of the accused. See Guevara v. State, 152
S.W.3d 45, 50 (Tex.Crim.App. 2004). See also Moore v. State, 969 S.W.2d 4, 10
(Tex.Crim.App. 1998).

 According to Juan Leroy Arriaga's testimony, when the bar closed, he and his
friends went outside into the parking lot and noticed that Appellant and his two friends had
returned. He speculated they were there waiting for them to come out of the bar. Arriaga
claimed that Appellant and his friends were crossing the street toward him and his group
so they crossed the street to meet them halfway. They argued and were going to fight
when Appellant and his friends ran back to their truck. Arriaga denied that any weapons
or pool cues were brandished. Arriaga's recollection then places him, his brother, Junior,
and Tanji Garcia in the bar parking lot walking to Junior's car. He testified that Appellant
then drove his truck over the curb of the street adjoining the bar parking lot and that as he
and Junior jumped to the left, Garcia went right and was struck by Appellant.

 Garcia testified that when she and her friends left the bar, Appellant and his friends
approached her group and words were exchanged, but the confrontation did not escalate
into a fight. According to her version, she let go of Junior's hand and began walking by
herself to his car in the back of the bar parking lot. A crowd was still in the bar parking lot,
but she was unaware of the details of what ensued between the crowd and Appellant and
his friends.

 Appellant's friends, Chad and Aaron, both testified that Arriaga's group was
brandishing pool cues and knives and chasing them. Appellant, Chad, and Aaron ran back
to the truck and backed out of an angled parking space as the crowd was yelling and hitting
the truck. According to Chad, the natural direction to drive after backing out of the angled
parking space was away from Arriaga's group. However, both Chad and Aaron testified
that Appellant turned the truck around after backing out of the space so as to face the
crowd he and his friends were fleeing from. Being unable to make a right turn onto the
street because of the crowd, Appellant and his friends avoided the crowd by jumping a curb
and driving through the bar parking lot. This resulted in Garcia being struck by the truck.

 From the circumstantial evidence presented, the jury could have inferred that
Appellant was aware of, but consciously disregarded, the substantial and unjustifiable risk
of fleeing from a crowd in a truck, jumping over a curb, and driving through the bar parking
lot. Appellant disregarded the easiest exit from the shopping center parking lot by backing
out of the parking space and turning the truck around so as to face the crowd his friends
claimed they were trying to avoid. Appellant acted recklessly and created the risk of
striking a pedestrian by driving toward a crowd instead of exiting the parking lot in the
opposite direction, which would have been the natural direction to take.

 Although the evidence is conflicting on whether weapons were brandished and who
instigated the confrontation, the jury, as the trier of fact, determined that Appellant struck
Garcia and that, at that time, he had the requisite mental state to be convicted of
aggravated assault. We conclude that under Jackson, the evidence was legally sufficient
to support Appellant's conviction. Issue one is overruled.

 Appellant asserts that the evidence supports his conclusion that Garcia's injuries
were the result of a "terrible accident" and that he did not have the requisite criminal intent
to commit the offense of aggravated assault. From a review of the most important and
relevant evidence discussed hereinabove, (3) we cannot conclude under Watson, that
Appellant's conviction was "clearly wrong" or "manifestly unjust." Thus, the evidence is
also factually sufficient to support Appellant's conviction. Issue two is overruled.

 By his third and final issue, Appellant contends the trial court erred in overruling his
objection to photographs of Garcia's injuries based on Rule 403 of the Texas Rules of
Evidence. We disagree. 

Standard of Review-Rule 403


 A trial court's ruling in response to a Rule 403 objection is reviewed for abuse of
discretion. State v. Mechler, 153 S.W.3d 435, 439 (Tex.Crim.App. 2005). The test for
whether the trial court abused its discretion is whether the action was arbitrary or
unreasonable. Id. We will not reverse the trial court's ruling if it is within the zone of
reasonable disagreement. Id. at 440. In determining whether the probative value of
evidence is substantially outweighed by the danger of unfair prejudice, a court should
consider (1) the probative value of the evidence; (2) the potential to impress the jury in
some irrational, yet indelible way; (3) the time needed to develop the evidence; and (4) the
proponent's need for the evidence. Erazo v. State, 144 S.W.3d 487, 489 (Tex.Crim.App.
2004).

 In determining the prejudicial effect of photographs, courts may consider the number
of photographs offered; their gruesomeness, detail, and size; whether they are in color;
whether they are taken close-up; whether the person in the photograph is clothed; and any
other factors unique to the situation. Shuffield v. State, 189 S.W.3d 782, 787
(Tex.Crim.App. 2006); Long v. State, 823 S.W.2d 259, 270 (Tex.Crim.App. 1991).

 Outside the jury's presence, the trial court heard Appellant's objections to State's
Exhibits 19 through 28 depicting Garcia's severe facial injuries. The objections were based
on Rules 401, 402, and 403 of the Texas Rules of Evidence. (4) Of the ten photographs, the
trial court permitted the State to select one photograph from three separate groups
showing three different angles of Garcia's face. The State chose Exhibits 20, 23, and 26,
and Appellant's objections to those photographs were overruled.

 All three photographs are approximately three by five inches and show only Garcia's
face. Exhibit 20 is a right center view of her face; Exhibit 23 is a frontal view of her face;
and Exhibit 26 shows the left side of her face. Although the photographs in the appellate
record appear in black and white, we will assume they were presented to the jury in color. 
See Shuffield, 189 S.W.3d at 787. The photographs were taken by Dr. John Marchbanks
just prior to performing surgery. Dr. Marchbanks testified that he was called in to consult
on Garcia's facial injuries, but did not offer any testimony describing the injuries.

 Serious bodily injury is an element of aggravated assault the State was required to
prove. § 22.02(a) (1). The photographs were offered into evidence for the purpose of
establishing that element. Appellant, however, argues that their admission was cumulative
because a paramedic and a police officer who were dispatched to the scene gave graphic
descriptions of Garcia's injuries during their testimony. He further urges that Garcia's
injuries were obvious when she testified. Appellant contends that the probative value of
the photographs was outweighed by their prejudicial effect. However, as the State points
out, the photographs actually served to soften the testimonials of Garcia's injuries. 

 The paramedic testified that he had never seen trauma like that sustained by
Garcia. He described her face as disfigured, "literally ripped apart." He continued that her
features were unrecognizable. He did not know where her mouth was and her nose was
"just shredded." He didn't know if her eye had been ripped out. One of the responding
police officers testified that Garcia's face looked like it "exploded." The objected-to
photographs, on the other hand, depict Garcia's face cleaned up in preparation for surgery. 
They show Garcia's injuries in a less gruesome manner than described by the testimony
of the paramedic and police officer.

 Photographs provide powerful visual evidence of an offense. See Sonnier v. State,
913 S.W.2d 511, 519 (Tex.Crim.App. 1995). A trial court does not abuse its discretion in
admitting into evidence gruesome photographs of a victim. Id. We conclude the
photographs were relevant and were not overly gruesome, and the trial court did not abuse
its discretion in admitting them. Issue three is overruled.

 Consequently, the trial court's judgment is affirmed.


 Patrick A. Pirtle

 Justice



Do not publish.
1. At the time of trial, Kelli and Appellant were married; however, through voir dire
testimony it was established that they were not married at the time of the incident and thus,
no spousal privilege applied to any communications made at that time.
2. Although the statute is worded disjunctively, Appellant was indicted for causing
serious bodily injury and using a deadly weapon. The court's charge tracks the indictment.
3. Sims v. State, 99 S.W.3d 600, 600-601 (Tex.Crim.App. 2003); Roberts v. State,
221 S.W.3d 659, 665 (Tex.Crim.App. 2007).
4. On appeal, Appellant limits his argument to Rule 403.



1pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:Tahoma;
 mso-bidi-font-weight:bold;}
span.term1
 {mso-style-name:term1;
 mso-style-unhide:no;
 font-weight:bold;}
span.pmterms11
 {mso-style-name:pmterms11;
 mso-style-unhide:no;
 color:black;
 font-weight:bold;
 font-style:normal;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:12.0pt;
 mso-ansi-font-size:12.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;
 mso-bidi-font-weight:bold;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-10-0466.cv%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-10-0466.cv%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-10-0466.cv%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-10-0466.cv%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-10-0466.cv%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
-->








NO. 07-10-0466-CV

 

IN
THE COURT OF APPEALS

 

FOR
THE SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL
D

 



APRIL 15, 2011

 



 

ROBERT SMITH,  

 

                                                                                         Appellant


v.

 

CITY OF LUBBOCK and ST. PAUL FIRE

and MARINE INSURANCE COMPANY, 


 

                                                                                         Appellees

_____________________________

 

FROM THE 237th DISTRICT
COURT OF LUBBOCK COUNTY;

 

NO. 2008-542,012-A; HONORABLE
WILLIAM C. SOWDER, PRESIDING

 



 

On
Motion to Dismiss/Abatement

 



 

Before QUINN, C.J., and 
CAMPBELL and PIRTLE, JJ.

            Pending before the court is the
motion of St. Paul Fire and Marine to dismiss the appeal for want of
jurisdiction.  We hold that motion in
abeyance and abate and remand the cause for entry of final orders.

            Robert Smith sued several
individuals or entities, two of which were St. Paul and the City of
Lubbock.  The cause was assigned number
2008-542,012.  The City of Lubbock and
St. Paul thereafter filed their respective motions for final summary
judgment.   On December 21, 2009, the trial court signed
an order wherein it stated that the court is of the opinion that the City[s] . . . Motion . . . should be GRANTED and
therefore ORDERED, ADJUDGED, and DECREED that the City of Lubbocks Motion for
Summary Judgment is Granted.  Six months
later, that is on June 21, 2010, a separate order was signed by the trial court
which not only referred to the prior summary judgment granted the City but also
stated that the Motion for Summary Judgment of . . . St. Paul . . . is granted.  Through that same order, the claims of Smith
against the City and St. Paul were severed into cause number 2008-542,012-A. 
(Emphasis added).  At that point,
the trial court wrote, in its order, that the matters in that cause [2008-542,012-A]
are final and are ripe for appeal and that the matters in this cause
[2008-542,012] will be abated if that cause is appealed.  Neither order, however, specified whether
Smith was denied or granted recovery, in whole or part, against either of the
mentioned defendants.  In other words,
the orders signed by the trial court did not expressly adjudicate the rights of
the parties.

            In Chandler v.
Reder, 635 S.W.2d 895 (Tex. App.Amarillo 1982, no writ), and Disco Machine of Liberal Co. v.
Payton, 900 S.W.2d 71 (Tex. App.Amarillo
1995, writ denied), we had occasion to consider summary judgments which lacked the language
necessary to make the order final and appealable.   In Disco, we noted that declarations by the trial court that the summary judgment was
granted were nothing more than an indication of the trial court's decision vis-a-vis the
motion[] for summary judgment. Disco Machine of Liberal Co. v. Payton, 900 S.W.2d at 74. They did not express a specific settlement of
rights between the parties or disclose the specific and final result
officially condoned by and recognized under the law.  Id.  Thus, such orders were not final because they
did not adjudicate the rights involved or evince a final result recognized by
the law.  Texas Windstorm Ins. Assn v. Poole, No. 07-07-0061-CV, 2007 Tex. App. Lexis 8281 (Tex. App.Amarillo October 18, 2007, no pet.) (mem. op.).

            Here, we have like orders simply granting the motions for
summary judgment.  Yet, without the decretal language expressly adjudicating the rights
involved, the orders are not final, appealable judgments.  Nonetheless, it is rather clear that the
trial court intended for the dispute to be final, at least between Smith, the
City of Lubbock, and St. Paul.  Given
this situation, rule of procedure allows us to grant the trial court
opportunity to modify the order from which appeal was taken to make it
final.  Tex.
R. App. P. 27.2 (stating that the appellate court may allow an appealed
order that is not final to be modified so as to be made final and may allow the
modified order and all proceedings relating to it to be included in a
supplemental record).

            Accordingly, we abate the appeal and remand the cause to
the trial court.  Upon remand, the trial
court is ordered to modify the December 21, 2009 and June 21, 2010 orders
granting summary judgment in a manner rendering them final, appealable orders
or judgments.  Finally, the trial court
is directed to include the modified judgments or orders it may execute in a
supplemental record to be filed with the clerk of this court on or before May
16, 2011.

                                                                        Per
Curiam