IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1891-04






ANDREW ROBERTS, JR., Appellant


 

v.



THE STATE OF TEXAS







ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW 


FROM THE TENTH COURT OF APPEALS

MCLENNAN COUNTY





 Hervey, J., delivered the opinion of the Court in which Keller, P.J., Womack, 
Keasler, and Cochran, JJ., joined. Meyers, Price, Johnson and Holcomb, JJ., dissented.

 

O P I N I O N


 In this case, we address the scope of this Court's review of a court of appeals' opinion that
affirms on factual-sufficiency grounds.

 A jury convicted appellant of aggravated robbery. The evidence shows that the robbery
victim (Barnes), who had known appellant for more than 40 years, gave appellant a ride in his car
to an apartment complex, commonly referred to as "the projects," where both men had grown up. 
As appellant and Barnes sat in the car in the parking lot of the complex, Barnes became suspicious
that he was about to be robbed by other men in the parking lot. Barnes told appellant to get out of
the car, but appellant delayed. Appellant eventually got out of the car, leaving the front passenger
door open. Appellant got in the back seat of the car and began "bouncing up and down." Barnes
saw appellant waving in the back seat just before several men with guns surrounded the car. One
of these men got into the front passenger seat through the front passenger door that appellant had left
open. Barnes heard one of the men tell appellant that "we'll take care of you later." Barnes
interpreted this to mean that appellant would later receive some form of compensation from the
robbers. The men robbed Barnes of property belonging to him, including his car. No one robbed
appellant.

 Barnes testified at trial that there was no doubt in his mind that appellant set him up for the
robbery.

 Q. [STATE]: When [appellant] got out, did he leave the front door open?


 A. [BARNES]: Yes.


 Q. You've got your front door open?


 A. Got my front door open.


 Q. And you've got [appellant] sitting in the back seat jumping up and down?


 A. Jumping up and down. And then I'm looking around saying, you have to go. 
When I turned to the left, I see a couple of guys coming this way. When I turned
back, [appellant] waving like this here, he doing this here. (Indicating.)


 Q. Who did you think he was waving to?


 A. I am not really dominoing that. I really don't get it. I see this and I see this
bouncing. It all seemed strange to me. I know I want to go, and I know something
is not right because I know the hood, I know what's happening.


 Q. Let's go two or three days later. Did you have an opportunity to think of this
action of [appellant's] doing this?


 A. Not that long. Really that night.


 Q. All right.


 A. Yeah.


 Q. When you recollected on it, what was in your mind, the intent of him doing that?


 A. Well, that's when the guys came on and got me.


 Q. So you believe he was waving the guys up?


 A. No doubt in my mind. Not a doubt in my mind that's what he was doing. As a
matter of fact, I couldn't have got robbed or even been in that situation if he hadn't
hit me up. I wouldn't have even been there. It never would have happened.


 Q. So after you saw the waving, tell the jury what took place.


 A. After I saw the waving, I turned around and saw the waving and I turned back. 
This guy was coming in. Then one guy jumped in the car, put a gun on me here.
[Appellant] got out of the back seat and stood there. Another guy put a gun here. I
looked up, I got seven nines on me and two guys standing off with nines. And
[appellant] standing over there and the dude tell [appellant] when he get out of the
car, "Drew, we'll take care of you later."


 Q. One of the guys who came up and surrounded you told [appellant] what?


 A. "Drew, we'll take care of you later."


 Q. What did you interpret that to mean?


 A. We going to pay you off later.

 

 Appellant did not testify at trial, but the trial court admitted his grand-jury testimony into
evidence. Appellant testified before the grand jury that he was not involved in the robbery and that
he even tried to prevent it by telling the robbers to leave Barnes alone. The grand jury indicted
appellant.

 Evidence was also presented that, in his initial statement to the police, Barnes made no claim
that appellant set him up for the robbery or that appellant was waving from the back seat just before
the robbers approached Barnes' car. The detective handling the case (January) testified that it is not
unusual for victims of traumatic situations to later recall details of the crime. January also testified
that appellant never gave a written statement and that appellant reluctantly assisted the police
investigation of the crime. January testified that he believed appellant assisted in the robbery. 
January acknowledged that appellant voluntarily spoke to the police, that appellant was never named
as a suspect in any of January's reports, that appellant had identified some of the other participants
in the robbery, and that appellant said that he was too frightened to give a written statement. January
testified that it was not uncommon for witnesses to crimes in the projects to be afraid to testify.
January also explained that other men involved in the robbery were much younger than appellant and
were part of an organized criminal group of which appellant was not a member.

 Two of the other robbers (Williams and Betacourt), who pled guilty in exchange for reduced
sentences, testified that appellant was not involved in the robbery. Williams testified that appellant
looked "surprised" during the robbery. He also testified that he had changed his story "[j]ust twice." 
Betacourt testified that appellant looked "perplexed, confused" during the robbery. Betacourt could
not count the number of times that he had "robbed people." The jury convicted appellant.

 Appellant claimed on direct appeal that the evidence is factually insufficient to support his
conviction. In a memorandum opinion affirming appellant's conviction, the court of appeals held
in a 2-1 decision that the evidence is factually sufficient to support the conviction. See Roberts v.
State, No. 10-03-00260-CR, slip op. at 1-2 (Tex.App-Waco, delivered October 27, 2004) (not
designated for publication). The entire factual-sufficiency analysis in the court of appeals' majority
opinion states:

 Rodrigo Barnes, a childhood friend of Andrew Roberts, Jr., was carjacked at
gunpoint by a neighborhood gang. Roberts knew the gang members and was in the
back seat of Barnes's parked Mercedes Benz when the carjacking occurred. Barnes
had been trying to get Roberts out of the vehicle before the robbery, but Roberts was
detaining him. Barnes believed Roberts was setting him up for the robbery by
signaling the gang while sitting in the back seat. Roberts and two of the gang
members who pled guilty to aggravated robbery said he did not assist in the robbery. 
Roberts was convicted of aggravated robbery. He was sentenced to thirty-five years
in prison. We affirm.


 Roberts first contends that the evidence is factually insufficient to support his
conviction as a party to the aggravated robbery. Viewing the evidence under the
appropriate standard of review, we find the evidence factually sufficient to support
the conviction. Zuniga v. State, [144 S.W.3d 477, 482-84 (Tex.Cr.App. 2004)]. Issue
one is overruled.


Roberts, slip op. at 1-2. (1)


 This Court exercised its discretionary authority to grant review. The ground upon
which we granted review states, "Does an intermediate appellate court have a duty to explain how
it arrived at its decision on error assigned to sufficiency of the evidence at trial?"

 We understand appellant to argue that the court of appeals' factual-sufficiency analysis
provides too little detail for this Court to determine whether the court of appeals properly applied
the factual-sufficiency standard in affirming appellant's conviction. We further understand appellant
to claim that the court of appeals' factual-sufficiency analysis should have provided the same amount
of detail that is required when a direct-appeal court reverses on factual-sufficiency grounds. 
Appellant requests that this Court remand the case to the court of appeals "with orders" to "fully
articulate" in another opinion "its reasoning regarding factual sufficiency of the evidence."

 Factual-sufficiency jurisprudence in civil cases is very persuasive in criminal cases like this
because factual-sufficiency jurisprudence in criminal cases is meant to be "in line with civil
practice." See Watson, 204 S.W.3d at 415. The factual-conclusivity clause in Article V, Section 6,
of the Texas Constitution, makes a direct-appeal court's factual-sufficiency decision final and
conclusive upon this Court. (2) See Watson, slip op. at 16. This Court's review of a direct-appeal
court's factual-sufficiency decision is limited by the factual-conclusivity clause to determining only
whether the direct-appeal court properly applied "rules of law." See Choate v. San Antonio & A.P.
Ry. Co., 44 S.W. 69, 69-70 (Tex. 1898) (purpose of factual-conclusivity clause was to restrict Texas
Supreme Court's jurisdiction to questions of law and to make direct-appeal court's factual-sufficiency decisions conclusive). (3)

 This concept is illustrated in the Texas Supreme Court's landmark decision in In Re King's
Estate, 244 S.W.2d 660, 661-62 (Tex. 1951). (4) There, the Texas Supreme Court decided that the
factual-conclusivity clause did not prohibit it from taking jurisdiction to decide, as a matter of law,
that the direct-appeal court applied an incorrect standard (a no-evidence standard) in addressing a
party's factual-sufficiency claim. Id.; see also Pool v. Ford Motor Co., 715 S.W.2d 629, 634-35
(Tex. 1986) (In Re King's Estate established that "the supreme court might take jurisdiction,
notwithstanding the finality of judgments of the courts of civil appeals on fact questions, in order to
determine if a correct standard has been applied by the intermediate courts"). (5)

 Even when a direct-appeal court reversed on factual-sufficiency grounds, it could make its
factual-sufficiency decision conclusive upon the Texas Supreme Court with a "simple statement"
that "it has considered all of the evidence and has concluded that the finding is so contrary to the
great weight and preponderance of the evidence as to be clearly wrong." See Hubacek v. Ennis State
Bank, 325 S.W.2d 124, 125-26 (Tex. 1959); Calvert, No Evidence and Insufficient Evidence Points
of Error, 38 Texas L. Rev. 361, 368 (1960). The Texas Supreme Court considered this simple
statement "a sufficient discharge of the [direct-appeal] court's duty." See id.; see also Hubacek, 325
S.W.2d at 125-26 (Texas Supreme Court would presume from this simple statement that direct-appeal court weighed the evidence "with proper rules of law as [its] guide").

 However, the Texas Supreme Court eventually came to appreciate the potential constitutional
conflict between a direct-appeal court's factual-sufficiency jurisdiction (which in its current
formulation permits it to reweigh the evidence and "unfind" a jury's finding) and Texas'
constitutional right to trial by jury, when a direct-appeal court reverses on factual-sufficiency
grounds. See Pool, 715 S.W.2d at 633-35. In an effort to avoid this potential constitutional conflict
and to assure that Texas' constitutional right to trial by jury remain "inviolate," the Texas Supreme
Court imposed several requirements upon a direct-appeal court, when it reverses on factual-sufficiency grounds. See id.; see also Cropper v. Caterpillar Tractor Co., 754 S.W.2d 646, 651-52
(Tex. 1988). (6)

 One of these requirements obligates the direct-appeal court to "set forth in detail the evidence
in the case along with its reasons for concluding that the jury's verdict was contrary to the evidence." 
See Cropper, 754 S.W.2d at 651; Pool, 715 S.W.2d at 635; see also Clewis v. State, 922 S.W.2d
126, 135 (Tex.Cr.App. 1996) (also adopting this requirement when a direct-appeal court reverses on
factual-sufficiency grounds). (7) When a direct-appeal court reverses on factual-sufficiency grounds,
the Texas Supreme Court may review its factual-sufficiency decision to determine whether it
implemented these requirements so that it can "determine if a correct standard of review of factual
insufficiency points has been utilized" by the direct-appeal court consistent with the requirements
of In Re King's Estate. See Pool, 715 S.W.2d at 635. (8)

 When a direct-appeal court affirms on factual-sufficiency grounds, the potential
constitutional conflict between a direct-appeal court's factual-sufficiency jurisdiction and Texas'
constitutional right to trial by jury is not implicated, and nothing in cases such as Pool requires the
direct-appeal court's opinion to provide the same amount of detail as when it reverses on factual-sufficiency grounds. (9) When a direct-appeal court affirms on factual-sufficiency grounds, civil law
still provides that the direct-appeal court can make its factual-sufficiency decision conclusive with
a simple statement that it has considered all of the evidence and has concluded that the finding is not
so contrary to the great weight and preponderance of the evidence as to be clearly wrong. (10) See
Hubacek, 325 S.W.2d at 125-26; Calvert, supra at 368. (11)

 In this case, we cannot conclude that the Court of Appeals' factual-sufficiency decision
improperly applied "rules of law." See Dyson, 692 S.W.2d at 457; Choate, 44 S.W. at 69-70. Its
opinion does not apply an incorrect standard by treating appellant's factual-sufficiency challenge as
some other challenge, as was the case in In Re King's Estate, 244 S.W.2d at 661. Nor is it apparent
that the Court of Appeals' opinion disregarded important evidence that is contrary to the jury's
verdict, as was the case in Sims, 99 S.W.3d at 602-04.

 A fair reading of the record indicates that the Court of Appeals' opinion set out the "most
important and relevant" evidence, including evidence contrary to the jury's verdict that three
witnesses (appellant, Williams and Betacourt) testified that appellant was not involved in the
robbery. Compare In Re King's Estate, 244 S.W.2d at 662 (deciding that direct-appeal court applied
a no-evidence, instead of a factual-sufficiency, standard from "conspicuous absence of any reference
to the evidence" for the losing party); see also Sims, 99 S.W.3d at 603 (factual-sufficiency review
does not require direct-appeal court to "discuss all the evidence" but it should include "a discussion
of the most important and relevant," evidence). (Emphasis in original). That the Court of Appeals'
opinion succinctly set out the evidence does not mean that it applied an incorrect standard. See id.;
see also Pool, 715 S.W.2d at 634-35 (In Re King's Estate established that "the supreme court might
take jurisdiction, notwithstanding the finality of judgments of the courts of civil appeals on fact
questions, in order to determine if a correct standard has been applied by the intermediate courts"). (12) 
Assuming that we even have jurisdiction to do so, we see no point in remanding this case to the court
of appeals "with orders" to "fully articulate" in another opinion "its reasoning regarding factual
sufficiency of the evidence."

 The judgment of the Court of Appeals is affirmed.


 Hervey, J.

Delivered: April 25, 2007

Publish
1. The court of appeals' majority opinion, therefore, reflects that it analyzed appellant's factual-sufficiency claim under Zuniga. This Court has since overruled Zuniga in Watson v. State, 204
S.W.3d 404, 415-17 (Tex.Cr.App. 2006). However, we find it unnecessary to remand this case to
the court of appeals to reconsider appellant's factual-sufficiency claim in light of Watson because
Zuniga's factual-sufficiency standard was more protective of appellant's rights than is Watson's
factual-sufficiency standard. See id. 
2. The factual-conclusivity clause in Article V, Section 6, provides that a direct-appeal court's
decision "shall be conclusive on all questions of fact brought before them on appeal or error." 
3. See also Dyson v. Olin Corp., 692 S.W.2d 456, 457 (Tex. 1985) (Texas Supreme Court has
no jurisdiction to review factual sufficiency of the evidence, but it does have jurisdiction to
determine whether direct-appeal court used the correct rules of law in reaching its conclusion);
Harmon v. Sohio Pipeline Co., 623 S.W.2d 314, 314-15 (Tex. 1981) (same and holding that direct-appeal court misapplied res ipsa loquitur rule of law in finding evidence factually insufficient to
support negligence finding).
4. This Court has recognized that In Re King's Estate is "useful in explaining the proper
procedures to follow in conducting factual sufficiency analysis." See Jones v. State, 944 S.W.2d
642, 647-48 n.5 (Tex.Cr.App. 1996).
5. The issue in In Re King's Estate was not whether the direct-appeal court improperly applied
a factual-sufficiency standard, but whether it undertook to apply that standard at all. See In Re
King's Estate, 244 S.W.2d at 661-62.
6. Justice Robertson claimed that the current formulation of the factual-sufficiency standard
violates Texas' constitutional right to trial by jury even with these requirements. See Cropper, 754
S.W.2d at 653-56 (Robertson, J., dissenting); Dyson, 692 S.W.2d at 458-59 (Robertson, J.,
concurring). Justice Gonzalez, on the other hand, apparently disagreed with Justice Robertson on
this point but cautioned about the misuse of these requirements by the Texas Supreme Court to
second-guess a direct-appeal court's factual-sufficiency decision thereby circumventing the factual-conclusivity clause and the Texas Supreme Court's "limited authority to review a factual sufficiency
holding." See Jaffe Aircraft Corp. v. Carr, 867 S.W.2d 27, 29-30 (Tex. 1993) (Gonzalez, J.,
concurring); Pool, 715 S.W.2d at 636 (Gonzalez, J., concurring).
7. Another requirement meant to assure that Texas' constitutional right to trial by jury remain
"inviolate" requires a direct-appeal court to exercise its factual-sufficiency jurisdiction with
"deferential standards of review" to jury verdicts. See Cropper, 754 S.W.2d at 651; see also Clewis,
922 S.W.2d at 135 (direct-appeal court's factual-sufficiency jurisdiction requires "deferential
standards of review applied" to jury verdicts).
8. In Pool, the Texas Supreme Court described the direct-appeal court's obligation when it
reverses on factual-sufficiency grounds so that the Texas Supreme Court can determine if it applied
the correct standard of review.


 In order that this court may in the future determine if a correct standard of review of
factual insufficiency points has been utilized, courts of appeals, when reversing on
insufficiency grounds, should, in their opinions, detail the evidence relevant to the
issue in consideration and clearly state why the jury's finding is factually insufficient
or is so against the great weight and preponderance as to be manifestly unjust; why
it shocks the conscience; or clearly demonstrates bias. Further, those courts, in their
opinions, should state in what regard the contrary evidence greatly outweighs the
evidence in support of the verdict. It is only in this way that we will be able to
determine if the requirements of In Re King's Estate have been satisfied.


Pool, 715 S.W.2d at 635 (emphasis supplied).
9. Other Texas Supreme Court cases also support its very limited authority to review a direct-appeal court's decision to affirm on factual-sufficiency grounds. See Read v. Scott Fetzer Co., 990
S.W.2d 732, 737 (Tex. 1998); Long v. Long, 138 S.W.2d 798 (Tex. 1939). In Hall v. Villarreal
Development Corp., 522 S.W.2d 195, 195-96 (Tex. 1975), the direct-appeal court affirmed on
factual-sufficiency grounds, and the Texas Supreme Court dismissed an application for writ of error
because the petitioners complained "only of matters relating to alleged factual insufficiency of the
evidence." The Texas Supreme Court also noted in Hall that the petitioners did not complain in their
application for writ of error that the direct-appeal court's factual-sufficiency analysis "included
incorrect statements concerning the rule applicable to its consideration of factual insufficiency of
evidence points." Id.; compare In Re King's Estate, 244 S.W.2d at 661-62.
10. Such a statement in criminal cases would usually follow the direct-appeal court's
determination that, after a consideration of all the evidence in a light most favorable to the verdict,
the evidence is sufficient to support a finding of guilt beyond a reasonable doubt under the Jackson
v. Virginia standard, which is "barely distinguishable" from a factual-sufficiency standard. See
Jackson v. Virginia, 443 U.S. 307, 319 (1979); Watson, 204 S.W.3d at 415 (factual-sufficiency
review is "barely distinguishable" from Jackson test); Santellan v. State, 939 S.W.2d 155, 164-65
(Tex.Cr.App. 1997) (factual-sufficiency review "begins with the assumption that the evidence is
legally sufficient under the Jackson test").
11. Dicta in our decision in Sims v. State, 99 S.W.3d 600, 600-01 (Tex.Cr.App. 2003),
suggesting that direct-appeal courts are required to "show their work" when they affirm on factual-sufficiency grounds, arguably is not "in line with civil practice." It is, however, unnecessary to
decide in this case whether this dicta in Sims should be disavowed since the Court of Appeals in this
case fulfilled any requirement to "show its work."
12. Appellant's real complaint in this case seems not to be a legal complaint that the Court of
Appeals misapplied "rules of law," but a factual complaint that the evidence of appellant's guilt is
greatly outweighed by contrary evidence. For example, appellant's brief asserts that "proof of
Appellant's guilt as a party to the robbery is greatly outweighed by the contrary proof, and is so weak
as to undermine confidence in the jury's determination." (Emphasis in original). The court of
appeals' factual-sufficiency decision not to reweigh the evidence to reverse appellant's conviction
is conclusive on this Court. See Watson, 204 S.W.3d at 412.