NO. 07-07-0099-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 15, 2008

_____

NANCY GAIL KNIGHT, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;

NO. 53,219-A; HONORABLE RICHARD DAMBOLD, JUDGE[1]

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Following a plea of not guilty, Appellant, Nancy Gail Knight, was convicted by a jury of possession of a controlled substance (cocaine) in a drug free zone, enhanced. Punishment was assessed at fifty-five years confinement. Presenting a single issue,

---

[1]Honorable Richard Dambold (Ret.), sitting by assignment. Tex. Gov't Code Ann. § 75.002(a)(3) (Vernon Supp. 2007).

Appellant contends the evidence is factually insufficient to sustain her conviction. We affirm.

**Background Facts**

Following a controlled buy of drugs by a "confirmed confidential informant" at Appellant's residence, Amarillo Police Officer Vernon Wilson of the Narcotics Unit obtained a search warrant to search 1004 West 10th, Apartment B, for crack cocaine. According to Wilson's testimony, the apartment was located within 1,000 feet of a school. On February 16, 2006, at approximately 10:08 a.m., a SWAT team composed of eleven officers and agents executed the search warrant. Within seconds of gaining entry into the apartment from the front and back doors, the scene was secured, and Appellant and her boyfriend, Montel Jordan,[2] were ordered to the floor and handcuffed.

According to Sergeant Brent Clay, upon entering the bedroom, Appellant repeatedly made statements directing him to a vase on the dresser which contained a plastic bag containing crack cocaine.[3] Appellant was adamant that her boyfriend had no connection to the drugs. She also directed Clay to a .380 caliber semi-automatic handgun located in

[2]Appellant's statement, which was written by one of the officers recites, "[t]he crack cocaine that I showed the officers in the flower pot had nothing to [sic] with my friend Mr. Moten." During her testimony, however, Appellant claimed that the only other person present at the time of the raid was her boyfriend, Montel Jordan, and that "Mr. Moten" was the name given to him by the officer taking her statement.

[3]Testimony was presented that the crack cocaine weighed 3.35 grams.

2

a nightstand next to the bed, which Clay testified contained five rounds of ammunition in the clip. The serial number had been scratched off. A clear plastic bag containing marihuana was also found during the search. Appellant was arrested and charged with possession of crack cocaine in a drug-free zone.

## Standard of Review

When conducting a factual sufficiency review, we examine all the evidence in a neutral light and determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004), *overruled in part by Watson v. State*, 204 S.W.3d 404, 415-17 (Tex.Crim.App. 2006). Recently, the Court of Criminal Appeals decided that factual sufficiency of the evidence, like legal sufficiency, is measured by the elements of the offense as defined by a hypothetically correct jury charge. *See Wooley v. State*, No. PD-0861-07, 2008 WL 2512843, at *1 (Tex.Crim.App. June 25, 2008) (citing *Malik v. State*, 953 S.W.2d 234, 239-40 (Tex.Crim.App. 1997)). We cannot reverse a conviction unless we find some objective basis in the record that demonstrates that the great weight and preponderance of the evidence contradicts the jury's verdict. *Watson*, 204 S.W.3d at 417. In other words, we cannot conclude that an appellant's conviction is "clearly wrong" or "manifestly unjust" simply because we disagree with the jury's verdict. *Id.*; *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997).

Additionally, as directed by the Texas Court of Criminal Appeals, when conducting a factual sufficiency review, we must consider the most important evidence that an appellant claims undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). Cognizant that we are to consider all evidence in a neutral light in conducting a factual sufficiency review, we are not, however, required to discuss all evidence admitted at trial. *See id. See also Roberts v. State*, 221 S.W.3d 659, 665 (Tex.Crim.App. 2007).

The jury is the exclusive judge of the facts. Tex. Code Crim. Proc. Ann. art. 36.13 (Vernon 2007) & art. 38.04 (Vernon 1979). As a reviewing court, we must always remain cognizant of the jury's role and unique position in evaluating credibility and demeanor of witnesses and giving weight to contradictory testimonial evidence. *Johnson v. State*, 23 S.W.3d 1, 8-9 (Tex.Crim.App. 2000). Reconciliation of conflicts in the evidence is within the exclusive province of the jury. *Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000). Unless the record clearly demonstrates a different result is appropriate, we must defer to the jury's determination. *Johnson*, 23 S.W.3d at 8.

### Possession

The State was required to prove that Appellant possessed a controlled substance, namely, cocaine, in an amount of one gram or more but less than four grams by aggregate weight, including any adulterants and dilutants, within 1,000 feet of the premises of a school. *See* Tex. Penal Code Ann. §§ 481.115(c) (Vernon 2003) and 481.134(c)(1)

4

(Vernon Supp. 2007). Possession means "actual care, custody, control or management." § 481.002(38) (Vernon 2003). By her factual insufficiency argument, Appellant challenges only the possession element of the offense. Specifically, she contends the State failed to prove she exercised care, custody, control [or] management.[4] We disagree.

To prove unlawful possession of a controlled substance, the State must prove that (1) the accused exercised actual care, custody, control, or management of the substance and (2) the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex.Crim.App. 2005). Whether this evidence is direct or circumstantial, it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. *Id.* at 405-06. In other words, additional independent facts and circumstances must "link" the accused to the contraband. *Evans v. State*, 202 S.W.3d 158, 161 n.9, 162 (Tex.Crim.App. 2006).[5]

There is no set formula to dictate a finding of links sufficient to support an inference of knowing possession of drugs. *See Taylor v. State*, 106 S.W.3d 827, 831 (Tex.App.–Dallas 2003, no pet.). However, presence or proximity, when combined with other evidence, either

---

[4]Although Appellant asserts that the evidence is insufficient to show that she exercised "care, custody, control, *and* management" (emphasis added), in order to establish the element of possession, the State need only prove "care, custody, control *or* management" (emphasis added) of the controlled substance.

[5]The Court of Criminal Appeals has recognized that "affirmative" adds nothing to the plain meaning of "link" and now uses only the word "link" to judge evidence of possession. *Evans*, 202 S.W.3d at 161 n.9.

5

direct or circumstantial (*e.g.*, "links"), may be sufficient to establish possession. *Evans*, 202 S.W.3d at 162. Links include, but are not limited to: (1) appellant's presence when the contraband was found; (2) whether the contraband was in plain view; (3) appellant's proximity to and the accessibility of the contraband; (4) whether appellant was under the influence of narcotics when arrested; (5) whether appellant possessed other contraband when arrested; (6) whether appellant made incriminating statements when arrested; (7) whether appellant attempted to flee; (8) whether appellant made furtive gestures; (9) whether there was an odor of the contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether appellant owned or had the right to possess the place where the drugs were found; (12) whether the place the drugs were found was enclosed; (13) the amount of contraband found; (14) whether appellant was in control of the place in which the contraband was found; and (15) whether appellant possessed a large amount of cash. See *Taylor*, 106 S.W.3d at 831; *Trejo v. State*, 766 S.W.2d 381, 384 (Tex.App.–Austin 1989, no pet.). It is the logical force of the circumstantial evidence, not the number of links, that must support a jury's verdict. *Evans*, 202 S.W.3d at 166.

**Analysis**

While executing a search warrant at Appellant's residence on the morning of February 16, 2008, officers were directed by Appellant to a vase on her dresser containing a plastic bag of crack cocaine. According to Officer Wilson, after Appellant surrendered the drugs, she said, "you got me, but we need to get some other people down the street also." Officer Douglas Herrington testified that he was the second man to enter the small apartment and

6

that he heard Appellant say, "I know why you're here and the gun's over there and my drugs are up on the dresser." Sergeant Clay testified that Appellant repeatedly told him that the drugs were in the vase on the dresser and that the gun was in the nightstand.

Corporal Keith Cargo, who was the first officer to enter from the back door, testified that he yelled out "police department, search warrant, get down." He estimated that it took ten seconds to secure Appellant and her boyfriend. During his search of the bedroom, he found a clear plastic bag containing marihuana underneath a trash bag. He also found a bag of bullets on the opposite end of the nightstand.

During cross-examination, Officer Wilson testified that Appellant was not hostile and that she was cooperative. He further testified that no money, no paraphernalia, nor any indicators for cooking crack were found.

Appellant testified in her defense. She admitted that she resided at the address listed on the search warrant. She also admitted to multiple convictions for theft. However, she denied having any involvement with the drugs and had no knowledge of who could have brought them into her apartment. According to her testimony, several friends and relatives had been at her apartment drinking and smoking "weed" the night before the raid while she and her mother were out shopping. The following morning, while cleaning and dusting, she discovered the plastic bag containing the crack cocaine in the vase while rearranging flowers that had fallen out. She recognized the substance in the plastic bag as cocaine

because she had seen relatives use it. She also found the gun while looking through papers in the nightstand.

Appellant testified that she was afraid to call the police to report what she had found and instead, was determined to find out who had hidden the drugs in her apartment and have that person retrieve them. She denied ownership of the gun explaining that as a felon, she knew she could not possess a firearm.

Appellant testified that her son, who visited frequently, used drugs. He walked to the porch during the raid and officers found marihuana and paraphernalia on his person. Appellant was unsure if the drugs belonged to her boyfriend, but testified that she immediately exonerated him of any connection to the drugs out of fear. In her words, "when they put me and [Montel Jordan] on the floor he was looking at me like you better tell them people that I didn't have nothing to do with this because we used to fight a lot and I was kind of afraid of him."

Goldie Faye Vaughn, who also lived at 1004 West 10th, Apartment B, but who was out of town visiting relatives, testified in Appellant's defense. Vaughn testified that she had allowed Appellant to move in with her after Appellant had been evicted from her previous residence. Although Appellant referred to Vaughn as her aunt, they were not blood relatives. According to Vaughn, she did not keep a gun at the apartment and had never known Appellant to be involved with drugs.

8

Ernestine Cunningham, Appellant's mother, testified and confirmed that she and Appellant had been shopping the evening before the raid. According to her testimony, Appellant had not been involved with drugs since the 1990's. She also had never known her to possess a weapon.

Not only did Appellant admit that she resided at the address listed on the search warrant, she was present when the crack cocaine was found. Furthermore, she directed officers to the location of the cocaine and she made incriminating statements to several of them. Corporal Cargo, who was responsible for taking measurements and drafting a diagram of the scene, testified that Appellant's proximity to the crack cocaine was eight feet. Although Appellant denied ownership of the gun found in the nightstand, it was within arms reach of the bed. Another controlled substance, to-wit: marihuana, was found underneath a trash bag. Notwithstanding the absence of evidence of several common "links," (i.e., money, drug paraphernalia, the odor of contraband, etc.), it is the logical force of the evidence presented and not the number of links that supports the jury's verdict.

Several officers testified that Appellant claimed the drugs belonged to her; however, she testified they were not hers. The jury, as exclusive judge of the facts and credibility of the witnesses, was free to accept or reject all or any part of any witness's testimony. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979). *See also Goodman v. State*, 66 S.W.3d 283, 287 (Tex.Crim.App. 2001). Having examined the evidence in a neutral light, we find the State presented sufficient "links" to rationally justify the jury in finding, beyond

9

a reasonable doubt, that Appellant had actual care, custody, control or management of the crack cocaine. Although unchallenged by Appellant, the State also presented sufficient evidence that Appellant possessed between one and four grams of the substance in a drug-free zone. Her sole issue is overruled.

## Conclusion

We are not persuaded that Appellant's conviction is clearly wrong or manifestly unjust. Thus, we conclude the evidence is factually sufficient to support her conviction.

Consequently, the trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish