*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

No. 04-07-00655-CR

Damaso **PECHE** Jr.,
Appellant

v.

**STATE** of Texas,
Appellee

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2006CRP000876-D4
Honorable Oscar J. Hale Jr., Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
            Sandee Bryan Marion, Justice
            Rebecca Simmons, Justice

Delivered and Filed:   April 22, 2009

REVERSED IN PART, AFFIRMED IN PART

A jury convicted Damaso Peche Jr. of three counts of aggravated kidnapping and three counts of engaging in organized criminal activity. On appeal, Peche claims the trial court erred in denying his motion to suppress and in finding him guilty of aggravated kidnapping when he was only indicted for engaging in organized criminal activity. Additionally, Peche claims the evidence is legally and factually insufficient to support his convictions for engaging in organized criminal activity. We

reverse and reform the judgment as to the aggravated kidnapping convictions, and affirm the judgment as to the engaging in organized criminal activity convictions.

## BACKGROUND

On the evening of September 7, 2006, Laredo police responded to an assault-in-progress call in the 2200 block of West Anna in Laredo, Texas. Upon arrival, police found an assault victim who had been badly beaten. According to a witness, the assault victim was attacked on the street by three men who had fled into a nearby house. Police went to the house, where the officers found three women who claimed to have been kidnapped and held in the house for ransom by Peche and others. One of the three women also claimed she had been sexually assaulted by Peche. The women directed police to Peche who was hiding in the house in a bathroom closet. Peche was arrested without a warrant.

Peche was charged in a three-count indictment with engaging in organized criminal activity and pled not guilty. A jury convicted Peche of three counts of engaging in organized criminal activity and three counts of aggravated kidnapping.[1] The trial court entered judgments of conviction on three counts of engaging in organized criminal activity and three counts of aggravated kidnapping. Peche was sentenced to forty years imprisonment for each offense, the sentences to run concurrently.

## MOTION TO SUPPRESS

Peche filed a motion to suppress his arrest and items of evidence found in the house, arguing the initial entry into the house and his arrest were made in violation of the Fourth Amendment of the

---

[1] Peche was also charged by separate indictment with seven counts of aggravated sexual assault. The trial court granted a mistrial on the aggravated sexual assault counts because the jury was deadlocked.

United States Constitution; Article I, Section 9, of the Texas Constitution; and Chapter 14 of the Texas Code of Criminal Procedure. The motion was denied by the trial court. On appeal, Peche argues the trial court should have granted his motion to suppress because (1) the State did not present any witnesses who had firsthand knowledge of the initial entry into the house and Peche's arrest, and (2) the State did not prove exigent circumstances authorizing the officers to enter the house and arrest him.

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). "We view the record in the light most favorable to the trial court's conclusion and reverse the judgment only if it is outside the zone of reasonable disagreement." *Id.* "We give almost total deference to a trial court's express or implied determination of historical facts and review *de novo* the court's application of the law of search and seizure to those facts." *Id.*

### 1. State's Suppression Hearing Evidence

The State's sole witness at the suppression hearing was Laredo police officer Carlos Villarreal, who did not become involved in the police investigation until after the three women were found in the house. Peche claims the State's reliance on Villarreal as its sole witness violated his right to confront the witnesses against him because Villarreal had no firsthand knowledge of the officers' initial entry into the house. Peche further claims that absent Villarreal's testimony, the State failed to establish the warrantless entry into his house and his arrest were reasonable. In response, the State argues Peche failed to preserve any error for appellate review because he did not make a specific and timely objection to the officer's testimony at the suppression hearing.

We agree Peche has not preserved this complaint for appellate review. Although the record shows Peche made several hearsay objections during Villarreal's testimony, it does not show Peche objected to the officer's testimony based on a violation of the Confrontation Clause. "An objection on hearsay does not preserve error on Confrontation Clause grounds." *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005). We conclude Peche failed to preserve his complaint about Villarreal's testimony for appellate review. *See* TEX. R. APP. P. 33.1(a)(1)(A).

### 2. *Warrantless Entry and Arrest*

In arguing the warrantless entry and arrest violated the Fourth Amendment to the United State's Constitution and Article I, Section 9 of the Texas Constitution, Peche makes no distinction between his federal and state constitutional rights. We, therefore, address his federal and state constitutional arguments together.

The Fourth Amendment of the United States Constitution guarantees the rights of individuals to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Thus, as a general rule, the law prohibits law enforcement officers from entering a suspect's home without a warrant or consent. *See Payton v. New York*, 445 U.S. 573, 589-90 (1980). Nevertheless, a warrantless entry and arrest in a suspect's home may be permissible, if probable cause exists and exigent circumstances are present. *Id*. at 590.

Similarly, Article 14.05 of the Texas Code of Criminal Procedure precludes an officer making an arrest without a warrant from entering a residence to make the arrest unless either "(1) a person who resides in the residence consents to the entry; or (2) exigent circumstances require that the officer making the arrest enter the residence without the consent of a resident or without a

warrant." TEX. CRIM. PROC. CODE ANN. art. 14.05 (Vernon 2005). Examples of exigent circumstances which justify a warrantless entry by police include: (1) providing aid or assistance to persons whom law enforcement reasonably believes are in need of assistance; (2) protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous; and (3) preventing the destruction of evidence or contraband. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007).

We first address the warrantless entry. Viewed in the light most favorable to the trial court's ruling, the evidence presented at the suppression hearing shows police went to the house at 2218 West Anna to pursue three men who assaulted a man on a public street and fled into a nearby house. The assault victim had been badly beaten. A witness told police one of the attackers had multiple tattoos. Police knocked on the doors of the house and heard noises from inside, but no one responded. Then, police spotted a door that was partially open. Looking through the doorway, police saw the door was obstructed by a bed. Police also saw a man on the bed with multiple tattoos like one of the men reportedly involved in the assault. Further, one of the officers recognized the man as a member of the "Los Pistoleros" gang. The man, identified as Robert Julian Rios, did not immediately comply with police requests to show his hands. Police entered the house and arrested Rios. While police were in the house, Raul Ramos emerged from another bedroom and the three women emerged from the bathroom.

In *Warden v. Hayden*, the United States Supreme Court held a warrantless entry to be valid in a similar situation. 387 U.S. 294, 298 (1967). There, an armed robbery suspect fled into a home, and witnesses contacted the police, who arrived at the home less than five minutes after the suspect

entered the home. Even though police obtained permission to enter the home from the suspect's wife, the Court did not base its decision on this fact. Instead, the Court concluded the entry into the home was legal based on exigent circumstances. The *Warden* Court said,

> [The police] acted reasonably when they entered the house and began to search for a man of the description they had been given and for weapons which he had used in the robbery or might use against them. The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others.

*Id*. at 298-99. Consistent with this reasoning, the United States Supreme Court has also held that "a suspect may not defeat an arrest which has been set in motion in a public place ... by the expedient of escaping to a private place." *United States v. Santana*, 427 U.S. 38, 43 (1976).

We conclude the police acted reasonably here as well. The suppression hearing evidence shows the police went to the house at 2218 West Anna in pursuit of three men who committed a violent assault on the street. Police heard movement inside the house, but no one answered the doors. Through an open door, police saw a man who fit the description of one of the men involved in the assault. The man was uncooperative and was identified as a gang member. In light of these circumstances, the police could have reasonably believed persons were inside the house who were in need of assistance. As a result, the warrantless entry was based on exigent circumstances and was legal.

We next address Peche's warrantless arrest. Chapter 14 of the Texas Code of Criminal Procedure sets out the specific circumstances when officers may arrest without a warrant. TEX. CRIM. PROC. CODE ANN. art. 14.03, 14.04 (Vernon 2005 & Supp. 2008). For example, a peace officer is authorized to arrest a person without a warrant when a felony has been committed and the offender

is about to escape so that there is no time to procure a warrant. *Id*. art. 14.04. A peace officer is also authorized to arrest a person without a warrant when the person is found in a suspicious place and under circumstances which reasonably show that the person has been guilty of some felony. *Id*. art. 14.03(a)(1).

The evidence presented at the suppression hearing shows Peche was found in a suspicious place and under circumstances which reasonably showed that he was guilty of a felony. *See id*. After Rios was arrested, three women emerged from the bathroom and told police they had been kidnapped and held in the house for ransom. Police then found Peche hiding in a bathroom closet, and the women identified him as one of the men who had participated in the kidnappings. Based on the women's statements to police, the officers had reasonably trustworthy information sufficient to believe that he had committed or was committing an offense. We, therefore, hold Peche's warrantless arrest was legal.

Because we hold that neither the initial entry into the house, nor Peche's warrantless arrest violated the Fourth Amendment of the United States Constitution; Article I, Section 9, of the Texas Constitution; or Chapter 14 of the Texas Code of Criminal Procedure, the trial court did not abuse its discretion in denying Peche's motion to suppress.

### INDICTMENT AND JUDGMENT

Peche next argues his convictions for three counts of aggravated kidnapping must be reversed because the only offenses charged in the indictment were three counts of engaging in organized

criminal activity. Peche relies on Article 21.24 of the Texas Code of Criminal Procedure, which governs indictments.[2] TEX. CRIM. PROC. CODE ANN. art 21.24 (Vernon 2009).

Article 21.24 requires the State, when charging multiple offenses in a single indictment, to set out each separate offense in a separate "count." *Martinez v. State*, 255 S.W.3d 550, 554 (Tex. Crim. App. 2007); TEX. CODE CRIM. PROC. ANN., art. 21.24(a). Additionally, separate "paragraphs" within a single count may allege different methods of committing the same offense. *Martinez*, 255 S.W.3d at 554; TEX. CODE CRIM. PROC. art. 21.24(b). "But since each 'count' alleges a single offense, an indictment cannot authorize more convictions than there are counts." *Martinez*, 255 S.W.3d at 554. Permitting more convictions than are authorized by the indictment implicates a defendant's due-process right to notice as well as a defendant's constitutional right to a grand jury screening of the charges. *Martinez*, 225 S.W.3d at 554. Moreover, when a defendant is convicted of more offenses than are authorized by the indictment, the error is not harmless. *Id*. at 555. "[E]ven if viewed as a purely statutory violation, it affect[s] [a defendant's] substantial rights." *Id*.

Here, the State charged Peche in a three-count indictment. The first count states:

> **THE GRAND JURORS**, duly selected, organized, sworn and impaneled as such for the County of Webb, State of Texas, at the **OCTOBER** term, **2006**, of the **406th** District Court of said County upon their oaths present in and to the said Court that

---

[2] Article 21.24 provides in relevant part,

   (a)    Two or more offenses may be joined in a single indictment, information, or complaint with each offense stated in a separate count, if the offenses arise out of the same criminal episode, as defined in Chapter 3 of the Penal Code.

   (b)    A count may contain as many separate paragraphs charging the same offense as necessary, but no paragraph may charge more than one offense.

TEX. CRIM. PROC. CODE ANN. art. 21.24 (Vernon 2009).

on or about the **5th** day of **SEPTEMBER, A.D., 2006** and anterior to the presentment of this indictment, in the County and State aforesaid, **ROBERT JULIAN RIOS** [], **RAUL RAMOS**, **DAMASO PECHE AND OLGA MARIA GONZALEZ**, did then and there, with intent to hold "Estella" for ransom or reward, intentionally or knowingly abduct "Estella" by restricting the movements of said "Estella" without her consent so as to interfere substantially with her liberty, by confining her, with the intent to prevent her liberation, by secreting or holding her in a place where she was not likely to be found.

And the defendant's [sic] did then and there commit said offense with the intent to establish, maintain, or participate in a combination or in the profits of a combination who collaborated in carrying on said criminal activity.

The allegations in counts two and three of Peche's indictment mirror the allegations in count one, except count two involves the complainant "Maria De La Luz" and count three involves the complainant "Lis."

Following the presentation of the evidence, the trial court submitted to the jury three counts of aggravated kidnapping and three counts of engaging in organized criminal activity. The jury found Peche guilty of three counts of aggravated kidnapping and three counts of engaging in organized criminal activity. Peche objected to the entry of judgment on the aggravated kidnapping convictions based on Article 21.24 of the Texas Code of Criminal Procedure.[3] The trial court overruled the objection, and in accordance with the jury's verdicts, entered judgments of conviction for all six offenses. Like the indictment in *Martinez*, however, the indictment here clearly enumerated only three separate counts. Because there were only three counts presented in the indictment, the

---

[3] Defense counsel stated, "I ask for a directed verdict as to the three counts of aggravated kidnapping as per Article 21.24 in the Code of Criminal Procedure...not more than one offense may be charged in one count in an indictment."

indictment authorized only three convictions. We conclude the trial court here erred in rendering judgment on all six offenses. As the *Martinez* court stated:

> The mistake the trial judge made here was in rendering judgment on all of those counts. The jury need not be concerned with the legal niceties surrounding the structure of the offenses within the indictment. That is the trial judge's job. Once the judge receives the jury's verdicts, he should perform the task of deciding what judgment is authorized by those verdicts in light of the controlling law, the indictment, and the evidence presented at trial. In this case, the trial judge did not perform that task. He should have realized that the four verdicts of the jury had the legal effect of authorizing only three judgments of conviction, because the law does not permit more than one conviction per count in the indictment.

*Martinez*, 225 S.W.3d at 555.

We, therefore, sustain Peche's issue concerning the indictment and his three aggravated kidnapping convictions. To remedy the trial court's harmful error, we strike Peche's three aggravated kidnapping convictions. *See id*.

## LEGAL SUFFICIENCY OF THE EVIDENCE

In a legal sufficiency review, we view the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Prible v. State*, 175 S.W.3d 724, 729-30 (Tex. Crim. App. 2005). A person commits the offense of engaging in organized criminal activity if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, he commits or conspires to commit a listed predicate offense. TEX. PENAL CODE ANN. § 71.02(a) (Vernon Supp. 2008); *see Nguyen v. State*, 1 S.W.3d 694, 695 (Tex. Crim. App. 1999). One of the predicate offenses listed in section 71.02(a) is aggravated kidnapping. TEX. PENAL CODE ANN. § 71.02(a) (1).

On appeal, Peche argues a rational trier of fact could not have found the elements of the offense of engaging in organized criminal activity, particularly the existence of a combination and the intent to commit a continuing series of criminal acts. A "combination" is defined as "three or more persons who collaborate in carrying on criminal activities." TEX. PENAL CODE ANN. § 71.01(a) (Vernon 2003). The phrase "collaborate in carrying on criminal activities" connotes an agreement to work together in a continuing course of criminal activities rather than a single criminal act. *Nguyen*, 1 S.W.3d at 697. The requisite intent may be established by circumstantial evidence. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

At trial, as in the indictment, the complainants were identified only as Estella, Maria De La Luz, and Lis. All three complainants testified at trial. The evidence showed the complainants had arranged to be taken across the Rio Grande River from Mexico and had entered the United States illegally. On Saturday, September 2, 2006, Maria and Lis were led across the Rio Grande River by a man and were taken to a hotel in Laredo, Texas, where they remained for several days. On Monday, September 4, 2006, Maria and Lis were joined at the hotel by another woman, Estella, who had been led across the border from Mexico as well.

On Monday night, Rios arrived at the hotel and told Estella, Maria, and Lis that he was the person designated to take them past the Laredo immigration checkpoint. The women got into a car with Rios, but he did not take them past the checkpoint. Instead, Rios drove the women to the house located at 2218 West Anna in Laredo, Texas. There, the women were taken to a bedroom inside of the house and were told they had been kidnapped. Rios demanded money from the women and told them that unless someone paid for them, they would be killed and their bodies would be thrown in

the river. Peche, who lived in the house, was present when some of these threats were made. On one occasion, Rios told Peche he should cut off Maria's finger, but Peche did not do so.

For the next three days, the three women remained in the custody and control of Rios, Ramos, and Peche. The women were held in a bedroom for long periods of time and provided little food or water. During these periods, Peche would frequently open the door to check on the women. Additionally, Peche informed Maria that she could pay off Peche's share by having "relations" with him. Estella and Maria were taken out of the house on several occasions, but were always returned to the house. Lis, who was visibly pregnant, was never taken out of the house.

On Wednesday, September 6, 2006, Estella and Maria were taken to a shed behind the house where they were disrobed, bound, and gagged. Maria testified that Peche walked her over to the shed himself. There, Rios and Ramos tortured the women. Estella was burned on her breast. Maria was burned on her buttocks. After this incident, Peche offered Maria pills ostensibly to alleviate the pain cause by the burns.

On Thursday evening, September 7, 2006, the women heard Peche, Ramos, and Rios arguing outside. Apparently, Peche was upset because his father, who also lived in the house, would be coming home soon, and the women had been at the house a long time and had not been turned over. Peche was also angry because Rios had already spent all of the money collected. The women then heard police sirens outside. When Peche came in the house, he told the women to hide in a bathroom shower. The women did as they were told. Peche hid in a closet in the same bathroom. Peche looked scared and had a little blood on his face. Peche told the women that if they did not tell police where he was hiding, he would see to it that they were taken past the Laredo immigration checkpoint.

We conclude that, based on the foregoing evidence, a rational jury could have found that Peche was collaborating with Rios and Ramos in carrying on criminal activities and that Peche had the requisite intent to engage in organized criminal activity.

Additionally, Peche argues "[a] rational trier of fact could not have found the essential elements of the offense [of engaging in organized criminal activity] beyond a reasonable doubt because the women chose to stay at the house" and "[i]f there was consent there can be no [] [a]ggravated [k]idnapping." Thus, Peche argues the evidence is legally insufficient to support the predicate offense of aggravated kidnapping. We disagree.

A person commits aggravated kidnapping if he intentionally or knowingly abducts another person with the intent to hold the person for ransom or reward. TEX. PENAL CODE ANN. § 20.04(a)(1) (Vernon 2003). The record here contains ample evidence showing the three women were held for ransom or reward. Estella testified that she was present when Rios and another man, "the leader of the gang," called her brother. Rios told Estella's brother that Estella was with him and that Rios wanted money for her release. Estella's brother said he had already paid someone else for Estella's crossing. Rios then told Estella's brother the prior payment did not matter because now Estella was kidnapped. Estella also talked to her brother and confirmed that she had in fact been kidnapped. Estella's brother was also asked to pay money for the release of Maria and Lis. After the call, Estella's sister sent a $1000.00 money order, which was admitted into evidence.

Maria also testified she was present when Rios telephoned her cousin and asked him to send money for Maria's release. Rios told Maria's cousin that if no money was sent, Maria would be killed. Rios handed the phone to Maria, and she told her cousin to send the money. Maria also told

her cousin, as instructed by Rios, that Maria's finger and hair would be cut off if the money was not sent. Later, Peche told Maria not to worry about these threats. Peche assured Maria that if no money was paid on Maria's behalf, Maria could pay off Peche's portion of the money by having a "relationship" with him.

Finally, Lis testified that Rios asked her for the phone numbers of family members so he could call them to ask them for money. Rios also told Lis that if her family did not pay money, she would be killed and thrown in the river. According to Lis, Peche was present when these threats were made.

We conclude that, based on the foregoing evidence, a rational jury could have found the predicate offense of aggravated kidnapping beyond a reasonable doubt. We, therefore, hold the evidence was legally sufficient to support Peche's convictions for engaging in organized criminal activity.

### FACTUAL SUFFICIENCY OF THE EVIDENCE

In a factual sufficiency review, we view all the evidence in a neutral light and will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *See Prible*, 175 S.W.3d at 730-31. Viewing all of the trial evidence in a neutral light, we cannot say the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *See Roberts v. State*, 221 S.W.3d 659, 664-65 (Tex. Crim. App. 2007). We, therefore, hold

the evidence was factually sufficient to support Peche's convictions for engaging in organized criminal activity.

## CONCLUSION

We reverse the trial court's judgment as it relates to the aggravated kidnapping convictions and reform the trial court's judgment to delete the aggravated kidnapping convictions. In all other respects, the judgment of the trial court is affirmed.

Karen Angelini, Justice

DO NOT PUBLISH