

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0210-09

**KELVIN KIANTA BROOKS, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S AND STATE'S PETITIONS FOR DISCRETIONARY REVIEW FROM THE TENTH COURT OF APPEALS
### MCLENNAN COUNTY

HERVEY, J., announced the judgment of the Court and delivered an opinion in which KELLER, P.J., KEASLER, and COCHRAN, JJ., joined. COCHRAN J., filed a concurring opinion in which WOMACK, J., joined. PRICE, J., filed a dissenting opinion in which MEYERS, JOHNSON, and HOLCOMB, JJ., joined. WOMACK, J., concurred.

### O P I N I O N

We granted discretionary review in this case to address, among other things, whether there

is any meaningful distinction between a legal-sufficiency standard under *Jackson v. Virginia*[1] and

a factual-sufficiency standard under *Clewis v. State* and whether there is a need to retain both

---

[1] 443 U.S. 307 (1979).

standards.[2] Under the *Jackson v. Virginia* legal-sufficiency standard, a reviewing court is required to defer to a jury's credibility and weight determinations.[3] In *Clewis*, this Court adopted a factual-sufficiency standard, which is supposed to be distinguished from a *Jackson v. Virginia* legal-sufficiency standard primarily by not requiring a reviewing court to defer to a jury's credibility and weight determinations.[4] But then *Clewis* contradicted itself by also requiring a reviewing court to apply this standard with deference to these jury determinations "so as to avoid an appellate court's substituting its judgment for that of the jury."[5] After having made several attempts to "clarify" *Clewis* in part to resolve this fundamental contradiction, we eventually came to realize that the *Clewis* factual-sufficiency standard is "barely distinguishable" from the *Jackson v. Virginia* legal-sufficiency standard.[6] We now take the next small step in this progression and recognize that these two standards have become essentially the same standard and that there is no meaningful distinction between them that would justify retaining them both. We, therefore, overrule *Clewis* and decide that the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense

---

[2] 922 S.W.2d 126 (Tex.Cr.App. 1996).

[3] *See Jackson*, 443 U.S. at 319.

[4] *See Clewis*, 922 S.W.2d at 133.

[5] *See id*.

[6] *See Rollerson v. State*, 227 S.W.3d 718, 724 (Tex.Cr.App. 2007) (factual-sufficiency review is "barely distinguishable" from legal-sufficiency review); *Watson v. State*, 204 S.W.3d 404, 442-48 (Tex.Cr.App. 2006) (Cochran, J., dissenting) (discussing this Court's attempts to "clarify" *Clewis*).

that the State is required to prove beyond a reasonable doubt.

The record reflects that, in cause number 10-07-00309-CR, a jury convicted appellant of possessing with intent to deliver more than four but less than 200 grams of crack cocaine and sentenced him to 25 years in prison. Appellant claimed on direct appeal that the evidence is legally and factually insufficient to support the intent-to-deliver element of this offense.

The evidence shows that two police officers went into a bar to investigate a report that someone matching appellant's description was there with a gun. When the officers asked appellant to step outside, appellant ran and threw two baggies towards a pool table just before one of the officers tased him. One of the baggies contained a small amount (about 3 grams) of marijuana. The other baggie contained one baggie holding 4.72 grams of crack cocaine and another baggie holding six ecstasy tablets that weighed 1.29 grams.[7] Appellant also had a cell phone and, according to one of the officers, "a couple of dollars."[8] Appellant did not appear to be under the influence of narcotics, and he was not in possession of any drug paraphernalia that could have been used for smoking crack cocaine. The police did not find a gun. The police gave appellant's cell phone and money to an acquaintance of appellant's before they took appellant to jail.

An experienced Waco Police Department drug-enforcement investigator (Thompson) testified that the bag containing the 4.72 grams of crack cocaine contained "two larger size rocks and then maybe a smaller one" and a useable amount of "crumbs." He testified that each of the two large

---

[7] Appellant was also charged with and convicted of possessing more than one but less than four grams of ecstasy and sentenced to 10 years in prison in cause number 10-07-00310-CR. That conviction is not at issue in this proceeding.

[8] Appellant testified at trial that he had "like $30 or $40" on him.

rocks weighed at least two grams and the other one weighed "a gram and a half or something like that." Thompson testified that "he would say" that 4.72 grams was a "dealer amount," which could have been cut up into 23 or 24 rocks. He testified that 4.72 grams of crack cocaine is worth about $470.

Thompson stated that a "typical quantity" that a dealer would have would be more than two rocks and that he "would think" that someone with more than a gram would be a dealer. Thompson testified that it is not "typical" for drug users to be in possession of a large amount of drugs and that he has "not run across many people that are [crack cocaine] users that have more than one to two rocks" because they are going to "smoke it as soon as [they] can get it." He also testified that "most" crack cocaine users "typically" would have some type of paraphernalia "to smoke the crack with" and that "[t]ypically dealers don't have crack pipes because it's not really common for them to use their product that they are selling." For example, Thompson testified:

> Q. [STATE]: Okay. So if somebody had approximately 4.72 grams and about three or four rocks and some crumbs, is that a dealer amount or user amount?
>
> A. [THOMPSON]: I would say that's dealer amount.
>
> * * *
>
> Q. So if he's got 4.72 grams--
>
> A. I would think they were a dealer.
>
> Q. Okay. I'm going to go–oh, you said that there are some other things that you would look for to see if somebody was dealing as opposed to using the drugs. What are some of those things that you would look for?
>
> A. In my experience, and we've come across people that are just possessing crack to use it. They usually have what is called a crack pipe or some type of heating element to heat the crack up with. Most of the people that we've come across out in the field that smoke crack have a crack pipe somewhere or have some brillo which you use inside of your crack pipe as a filter to keep from inhaling the whole piece of crack up when you're smoking it. Typically dealers don't have crack pipes because it's not

really common for them to use their product that they are selling. You can't make any money if you're hooked on your own product. So typically a user is going to have some type of instrument to smoke the crack with, and, like I said before, they normally don't have more than one or two because they are smoking. You don't save crack. It's not like a rainy day type of deal. You want to smoke it as soon as possible.[9]

On cross-examination, Thompson described other factors, none of which are present in the record in this case, indicating that a person could be a dealer: (1) possession of five, ten, or twenty dollar bills; (2) names in the person's cell phone; (3) possession of some document identifying who owes what; (4) possession of a weapon; or (5) others observed the person trying to sell drugs. Thompson also acknowledged that a person could possess 4.72 grams of crack cocaine for personal use.

Appellant testified that he possessed only the baggie containing the small amount of marijuana. He denied possessing the baggies containing the crack cocaine and the ecstasy pills. Appellant also admitted that he has two prior convictions for possession of cocaine and another prior conviction for possession with intent to deliver cocaine. The jury was instructed in the charge that it could have considered these extraneous offenses "in determining the intent, motive, opportunity, preparation, plan, knowledge, identity, or absence of mistake or accident by the Defendant, if any, in connection with the offenses, if any, alleged against him in the indictment in this case, and for no other purpose."

During closing jury arguments, the State relied primarily on Thompson's testimony to argue that appellant possessed the crack cocaine with the intent to deliver it:

---

[9] We note that appellant was charged with just possessing the six ecstasy pills that weighed 1.29 grams. The record contains no testimony on how many pills a typical user would take or a typical seller would possess with intent to deliver.

[STATE]: There is no evidence at all, none, that he was a user. What does that tell you? What does that tell the reasonable person? I'm going to go to Investigator Thompson right now because he kind of ties in with that. The dealer level back on the crack, and I'm bouncing back and forth because it's basically the same charge. Just with crack we have added the element of intent to deliver. But Investigator Thompson testified that a typical user, one, two rocks, max, because what do they do when they get it? They want to smoke it because they are craving this drug, because they have to use it. They don't hold it for a rainy day. They don't keep it for later. They use it then. And when they use it, they have paraphernalia on them. They don't carry a couple of rocks and then go home and find their stuff. They have it all on their person. No drug paraphernalia, no brillo pad, no push pipe, no push rod, no crack pipe, nothing. Again, because he's not a user. There is no evidence of that. In fact, the amount that he had is dealer amount. This is 23 to 25 crack rocks. It's way more than one or two for a user. 4.72 grams doesn't really seem like a lot in here. It's a lot on the street. He had $500, $600 worth of drugs on him that night.

* * *

About him being a user and not a dealer, he got on the stand. Did he tell you, "I'm a user, not a dealer"? He didn't say that. That would have been the perfect chance for him to say that. Does he look like a user? You know we had somebody in voir dire say, "I've seen crack users, and I can tell when I see them." Did he have a pipe on him? No. What else did he not have? You know, no pipe. He had some money on him, not a lot because he hadn't started selling yet. He still had his whole 25-rock stash. He hadn't started selling yet. He had the cell phone. Yeah, it would have been nice to get the names out of the cell phone and see if they match up with other drug dealers, you know, that we know. The police, they were being nice. They gave the phone to his sister and let her take it home. So are we going to blame the cops for being a little too nice that night, even after he had cussed at them and resisted, swung at them, kicked them? That's not reasonable either.

During its closing jury arguments, the defense relied on other factors to argue that the evidence did not show appellant's intent to deliver.

[DEFENSE]: I know Mr. Brooks has a past. He came up here and he testified that he has a juvenile conviction, that he has two possession convictions, he has a delivery conviction. And when you look at all that, it would be easy for you to go back there and say, "You know what? Because of all this, you know, he's not telling the truth and we shouldn't believe him." But I don't think that's what you're going to do. Yeah, he has had run-ins with the law, and as he stated, he panicked. He panicked because he had the marijuana on him. But as he testified to you, he didn't know anything about that cocaine, didn't know anything about that [ecstasy]. There was no evidence presented to you other than Officer Thompson who came up here yesterday and said, "Oh, it's four grams to 200 grams, but that 4.72, oh, yeah, easy,

that's a delivery. Oh, yeah. It's worth $500, $600." But listen to his testimony carefully. He also said that he looks for other things, too, and they should have looked for other things too. They should have looked to determine whether or not Mr. Brooks was carrying a large amount of money, whether or not he had a gun, and we know that there was no gun found in that place now, whether or not he had any documents with him that would indicate, "These people owe me money" or "This is who I sold to." They should have gotten a cell phone to see if there were any callers in there that were potential buyers or users or anything of that nature. They should have asked people in the bar whether or not Mr. Brooks when he went in there, did anybody ever come up to him and say, "Do you have anything I can get from you tonight" or "Can you sell me something?" There was no testimony whatsoever on that. All you have is, ladies and gentlemen, as far as the delivery is what Allen Thompson said, but most importantly, as I indicated to you, you have to show that he was in possession of those items, and it's just not there.

The court of appeals decided that "[s]tanding alone, 4.72 grams is insufficient evidence of intent [to deliver because this amount is also consistent with personal use], additional evidence is required." *See Brooks v. State*, No. 10-07-00309-CR, slip op. at 8 (Tex.App.–Waco, delivered October 1, 2008) (memorandum opinion not designated for publication). The court of appeals decided that the additional evidence is legally sufficient "to establish possession with intent to deliver," but that "viewing the evidence in a neutral light, it is not factually sufficient." *See Brooks*, slip op. at 9-10 ("Viewing the evidence in the light most favorable to the verdict, the evidence is legally sufficient to establish possession with intent to deliver. However, viewing the evidence in a neutral light, it is not factually sufficient. The record does not reflect that Brooks was arrested in a high crime or high drug area, the drugs were packaged in such a way to suggest that Brooks is a dealer, Brooks was in possession of any drug paraphernalia for the purpose of dealing, or Brooks possessed a large amount of cash . . . . Accordingly, we find the proof of guilt to be so weak as to render the jury's verdict clearly wrong and manifestly unjust.").

We granted review on both the appellant's and the State's petitions for discretionary review. Appellant's petition for discretionary review presents the following ground for review:

(1) The Court of Appeals erred in holding the evidence was legally sufficient to establish appellant had the intent to distribute cocaine, where the court found the same evidence was factually insufficient to establish the necessary intent.[10]

The State's petition for discretionary review presents the following grounds for review:

(1) Is there any meaningful distinction between legal sufficiency review under *Jackson v. Virginia* and factually [sic] sufficiency review when that review is limited to the weakness of the evidence in the abstract and, if so, does it escape review in this Court?

(2) Did the Tenth Court of Appeals ignore its duty to adequately explain why the evidence, though legally sufficient, is so weak as to render the jury's verdict clearly wrong and manifestly unjust?

## I. Is There Any Meaningful Distinction Between *Jackson v. Virginia* Legal-Sufficiency Review and  *Clewis* Factual-Sufficiency Review

We begin the discussion by noting that in *Watson* this Court recognized that a factual-sufficiency standard is "barely distinguishable" from a legal-sufficiency standard and that "the **only** apparent difference" between these two standards is that the appellate court views the evidence in a "neutral light" under a factual-sufficiency standard and "in the light most favorable to the verdict" under a legal-sufficiency standard.  *See Watson*, 204 S.W.3d at 415 (emphasis supplied).  It is fair to characterize the *Jackson v. Virginia* legal-sufficiency standard as:

Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt.[11]

Compare this to the *Clewis* factual-sufficiency standard which may fairly be characterized as:

---

[10]

The question presented in this ground is whether a jury could rationally find beyond a reasonable doubt that appellant possessed with intent to deliver 4.72 grams of crack cocaine because appellant fit a profile of "most" or "typical" drug dealers.

[11]

*See Jackson*, 443 U.S. at 319.

Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt.[12]

Viewing the evidence "in the light most favorable to the verdict" under a legal-sufficiency standard means that the reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the **sole** judge of the witnesses' credibility and the weight to be given their testimony.[13] Viewing the evidence in a "neutral light" under a factual-sufficiency standard is supposed to mean that the reviewing court is not required to defer to the jury's credibility and weight determinations and that the reviewing court may sit as a "thirteenth juror" and "disagree[] with a jury's resolution of conflicting evidence" and with a jury's "weighing of the evidence." *See Tibbs v. Florida*, 457 U.S. 31, 42 (1982) (internal quotes omitted) (describing appellate reversals of convictions based on evidentiary weight); *Watson*, 204 S.W.3d at 447 (Cochran, J., dissenting) (factual-sufficiency standard "explicitly makes the reviewing court a 'thirteenth juror' who makes an independent, *de novo* determination of credibility and the weight to

---

12

Our decision in *Watson* approved of this formulation of the *Clewis* standard. *See Watson*, 204 S.W.3d at 415. Stated another way, the question under the *Clewis* factual-sufficiency standard is whether, after viewing all of the evidence in a "neutral light," the jury's verdict is either "clearly wrong and manifestly unjust" or "against the great weight and preponderance of the [conflicting] evidence." *See Watson*, 204 S.W.3d at 414-15; *see also Clewis*, 922 S.W.2d at 129 (reviewing court views the evidence in a neutral light and sets aside the jury's verdict "if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust").

13

*See Jackson*, 443 U.S. at 319 ("Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all* of the evidence is to be considered in the light most favorable to the prosecution.") (emphasis in original) and at 326 (a "court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution").

be given the testimony and the inferences to be drawn from the base facts").[14] Therefore, the difference between a factual-sufficiency standard and a legal-sufficiency standard is that the reviewing court is required to defer to the jury's credibility and weight determinations (i.e., it must view the evidence in the light most favorable to the verdict) under a legal-sufficiency standard while it is not required to defer to a jury's credibility and weight determinations (i.e., it must view the evidence in a "neutral light") under a factual-sufficiency standard. *See id*.; *Johnson v. State*, 23 S.W.3d 1, 13 (Tex.Cr.App. 2000) (McCormick, P.J., dissenting) ("To defer or not to defer, that is the question.").

It is significant that *Clewis* purported to treat the evidentiary-weight standard described in *Tibbs* as a component of the *Clewis* factual-sufficiency standard that views the evidence in a "neutral light." *See Clewis*, 922 S.W.2d at 149 (Clinton, J., concurring) ("The reviewing court no longer 'views the evidence in the light most favorable to the prosecution;' rather it must consider and weigh the evidence to determine whether the jury's resolution of conflicting testimony was manifestly unjust"(citing *Tibbs*, 457 U.S. at 42)).[15] This Court's decision in *Johnson* also recognized that "there appears to be no substantive differences" between the *Clewis* factual-sufficiency standard and the

---

14

The Supreme Court in *Tibbs* explained the difference between reversals based on evidentiary sufficiency (i.e., *Jackson v. Virginia*) and reversals based on evidentiary weight (i.e., factual-sufficiency) which "draws the appellate court into questions of credibility." *See Tibbs*, 457 U.S. at 38 n.11.

15

The lead majority opinion in *Clewis* seems to have cited *Tibbs* for the proposition that "when conducting a factual sufficiency review, an appellate court cannot substitute its judgment for that of the factfinder since this would violate the defendant's right to trial by jury." *See Clewis*, 922 S.W.2d at 133 (citing *Tibbs*, 457 U.S. at 42). *Tibbs*, however, stands for the opposite proposition-that the reviewing court can substitute its judgment for the factfinder's in conducting a factual-sufficiency review. *See Tibbs*, 457 U.S. at 42 (reviewing court can sit as "thirteenth juror" and disagree "with the jury's resolution of conflicting testimony" and "the jurors' weighing of the evidence").

evidentiary-weight standard described in *Tibbs*. *See Johnson*, 23 S.W.3d at 8 n.8 ("Elsewhere, the equivalent of determining legal sufficiency is often referred to as examining the 'sufficiency of the evidence,' and the companion term to factual sufficiency is referenced as reviewing the 'weight of the evidence.' However, there appears to be no substantive differences between these terms, and this Court has treated them interchangeably."). It is also noteworthy that the evidentiary-weight standard described in *Tibbs* does not mention anything about the reviewing court being required to afford "appropriate deference" to the jury's credibility and weight determinations. *But see Clewis*, 922 S.W.2d at 133 (reviewing court must apply a factual-sufficiency standard in an "appropriately deferential" manner).

Therefore, if a reviewing court is required to defer in any manner to a jury's credibility and weight determinations, then it is not viewing the evidence in a "neutral light" and not applying the type of factual-sufficiency standard described in *Tibbs* and purportedly adopted in *Clewis*. And it is very clear that this Court's factual-sufficiency decisions have always required a reviewing court in a factual-sufficiency review to afford a great amount of deference (though this Court has never said precisely how much deference) to a jury's credibility and weight determinations. *See Clewis*, 922 S.W.2d at 133 (reviewing court may disagree with a jury's weighing of the evidence but in an "appropriately deferential" manner "so as to avoid an appellate court's substituting its judgment for that of the jury"); *see also Johnson*, 23 S.W.3d at 7 (factual-sufficiency review "must employ appropriate deference to prevent an appellate court from substituting its judgment for that of the fact finder, and any evaluation should not substantially intrude upon the fact finder's role as the sole

judge of the weight and credibility given to witness testimony").[16]

And in *Watson* this Court reiterated that it had never tolerated, "even in the 'factual sufficiency' context," an "appellate court simply opting to 'disagree' with the jury's verdict." *See Watson*, 204 S.W.3d at 416. This Court further stated in *Watson*:

> It is in the very nature of a factual-sufficiency review that it authorizes an appellate court, **albeit to a very limited degree**, to act in the capacity of a so-called "thirteenth juror."
>
> * * *
>
> An appellate court judge cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, he would have voted to acquit had he been on the jury. Nor can an appellate judge declare that a conflict in the evidence justifies a new trial simply because he disagrees with the jury's resolution of that conflict.

*See Watson*, 204 S.W.3d at 416-17 (emphasis supplied).

This, however, is inconsistent with the evidentiary-weight standard described in *Tibbs* (and purportedly adopted in *Clewis*) and with viewing the evidence in a "neutral light," which permit the reviewing court to show **no** deference at all to a jury's credibility and weight determinations and to sit as a "thirteenth juror" without any limitation and to declare that a conflict in the evidence justifies a new trial simply because the reviewing court disagrees with the jury's resolution of conflicting evidence. *See Tibbs*, 457 U.S. at 42. This is what is supposed to distinguish the factual-sufficiency standard from the legal-sufficiency standard. *See id*. Thus the *Clewis* factual-sufficiency standard's

---

[16] This requirement that the reviewing court afford "appropriate deference" to a jury's credibility and weight determinations in a factual-sufficiency review is motivated by a concern that not requiring such deference might violate the right to trial by jury set out in the Texas Constitution. *See Clewis*, 922 S.W.2d at 134-36 (discussing "factfinder deference and right to trial by jury"); *see also Roberts v. State*, 221 S.W.3d 659, 661-62 n.7 (Tex.Cr.App. 2007) (in order to safeguard Texas' constitutional right to trial by jury, the Texas Supreme Court imposed several requirements upon the reviewing court when it reverses on factual-sufficiency grounds such as requiring the reviewing court to exercise its factual-sufficiency jurisdiction with "deferential standards of review").

requirement that the reviewing court view the evidence with "appropriate deference" to a jury's credibility and weight determinations is not only contradictory and inconsistent with the evidentiary-weight standard described in *Tibbs,* it also makes the *Clewis* factual-sufficiency standard even more "barely distinguishable" from a *Jackson v. Virginia* legal-sufficiency standard.[17]

The final nail in the coffin that made a legal-sufficiency standard "indistinguishable" from a factual-sufficiency standard came in this Court's decision in *Lancon v. State*.[18] There this Court decided that the reviewing court cannot decide that the evidence is factually insufficient "solely because [it] would have resolved the conflicting evidence in a different way" since "the jury is the sole judge of a witness's credibility, and the weight to be given the testimony." *See Lancon*, 253 S.W.3d at 707. Our current formulation of a factual-sufficiency standard in *Lancon,* recognizing that the jury is "the sole judge of a witness's credibility, and the weight to be given their testimony," entirely eliminates the viewing the evidence in a "neutral light" component of a factual-sufficiency standard and makes the current factual-sufficiency standard indistinguishable from the *Jackson v. Virginia* legal-sufficiency standard. *See also Johnson*, 23 S.W.3d at 8 (also recognizing that if "a reviewing court was to accord absolute deference to the fact finder's determinations, then a factual sufficiency determination would, no doubt, become the functional equivalent of a legal sufficiency

---

[17]

*See Watson*, 204 S.W.3d at 441 (Cochran, J., dissenting) ("Thus, *Clewis* empowered courts of appeals to act as a 'thirteenth juror' (one who was not even present to see and hear the witnesses) and disagree with the fact-finder's determination, but to be deferential to the fact-finder's judgment as it did so. This standard was ambiguous and contradictory from the beginning.") and at 445 (one "cannot view the evidence in a neutral light while at the same time giving deference to the factfinder's determinations of weight and credibility"); *Johnson*, 23 S.W.3d at 13-14 (McCormick, P.J., dissenting) (also discussing "*Clewis'* internal contradictions on the question of appellate deference to the jury's credibility and weight determinations").

[18]

253 S.W.3d 699 (Tex.Cr.App. 2008).

review"). [19]

This may be illustrated by considering the following formulation of the factual-sufficiency standard that *Watson* approved: "Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt." *See Watson*, 204 S.W.3d at 415. Substituting "in the light most favorable to the jury's verdict" for the "a neutral light" component of this formulation of the standard, as our cases such as *Lancon* have done by recognizing that "the jury is the sole judge of a witness's credibility, and the weight to be given the testimony," [20] the factual-sufficiency standard from *Watson* may be reformulated as follows: "Considering all of the evidence in **the light most favorable to the verdict**, was a jury rationally justified in finding guilt beyond a reasonable doubt." This is the *Jackson v. Virginia* legal-sufficiency standard. There is, therefore, no meaningful distinction between the *Jackson v. Virginia* legal-sufficiency standard and the *Clewis* factual-sufficiency standard, and these two standards have become indistinguishable.

---

[19] A dissenting opinion in *Lancon* stated that the majority opinion "seems to say that from now on, the level of deference due a jury's decision will be total deference when the decision is based on an evaluation of credibility." *See Lancon*, 253 S.W.3d at 708 (Johnson, J., dissenting). We disagree. Our decision in *Lancon* merely recognizes that the jury is the "sole judge of a witness's credibility, and the weight to be given the testimony" thus requiring the reviewing court to defer to the jury on these determinations (i.e., view the evidence in the light most favorable to the verdict). Viewing the evidence in the light most favorable to the verdict, however, begins the *Jackson v. Virginia* legal-sufficiency analysis. The *Jackson v. Virginia* standard still requires the reviewing court to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson*, 443 U.S. 319 (emphasis in original); *Watson*, 204 S.W.3d at 418 n.7 (Hervey, J., dissenting). This is the portion of the *Jackson v. Virginia* standard that essentially incorporates a factual-sufficiency review. *See Clewis v. State*, 876 S.W.2d 428, 438-39 (Tex.App.–Dallas 1994) (*Jackson v. Virginia* standard necessarily encompasses a factual-sufficiency review), *vacated*, 922 S.W.2d at 136.

[20] *See Jackson*, 443 U.S. at 319.

## II. Double-Jeopardy Considerations

The *Clewis* factual-sufficiency standard being "barely distinguishable" (and now indistinguishable) from a legal-sufficiency standard also raises some troubling double-jeopardy questions under the United States Supreme Court's decision in *Tibbs*. First, we find it necessary to discuss the proceedings involving Mr. Tibbs in the Florida courts.

In 1976, the Florida Supreme Court reversed Tibbs' convictions for rape of one person and first-degree murder of another person because of the "weakness and inadequacy" of the rape victim's testimony, which was the only testimony that directly connected Tibbs to these crimes. *See Tibbs v. Florida*, 397 So. 2d 1120, 1126 (Fla. 1981) (several aspects of the rape victim's testimony "cast serious doubt on her believability"); *Tibbs v. Florida*, 337 So.2d 788, 791 (Fla. 1976) and at 792 (Boyd, J., specially concurring). The Florida Supreme Court remanded the case to the trial court for a new trial, which at the time was the remedy provided by Florida law upon a finding that the evidence did not support a defendant's conviction. *See id*.

Before Tibbs could be retried, the United States Supreme Court decided that double-jeopardy principles prohibit the states from retrying a defendant whose conviction has been reversed on appeal on evidentiary-sufficiency (i.e., legal-sufficiency) grounds essentially because this has the same effect as an acquittal by a jury.[21] After the United States Supreme Court handed down these decisions, the Florida trial court granted Tibbs' motion to dismiss his indictment on the grounds that double-jeopardy principles prohibited his retrial. *See Tibbs*, 397 So.2d at 1121. A Florida Court of Appeals reversed this order and reinstated Tibbs' indictment upon deciding that the Florida Supreme

---

[21]

*See Burks v. United States*, 437 U.S.1 (1978); *Greene v. Massey*, 437 U.S. 19 (1978).

Court's 1976 decision reversing Tibbs' convictions "was based on the weight, rather than the legal sufficiency, of the evidence." *See id*.; *State v. Tibbs*, 370 So.2d 386, 388-89 (Fla. Dist. Ct. App. 1979).

In 1981, the Florida Supreme Court reviewed this decision noting at the outset "that the distinction between an appellate reversal based on evidentiary weight and one based on evidentiary sufficiency was never of any consequence until [the United State's Supreme Court's decision in] *Burks*," apparently because the remedy provided in both situations was a remand for a new trial. *See Tibbs*, 397 So.2d at 1122. The Florida Supreme Court examined several of its prior decisions that the Florida Court of Appeals had relied upon for deciding that there was a distinction in Florida law between convictions reversed for evidentiary weight (proper remedy is remand for new trial) and convictions reversed for evidentiary sufficiency (proper remedy is an appellate acquittal). *See Tibbs*, 397 So.2d at 1122-23 (Florida Court of Appeals "distinguished *Burks* by placing Tibbs' reversal in [evidentiary weight] category; appellate reversals where the evidence is technically sufficient but its weight so tenuous or insubstantial that a new trial is ordered"). The Florida Supreme Court, however, viewed "these ambiguous decisions as reversals which were based on [evidentiary] sufficiency; that is, as cases in which the state failed to prove the defendant's guilt beyond a reasonable doubt." *See Tibbs*, 397 So.2d at 1124-25.

The Florida Supreme Court, therefore, concluded that the Florida Court of Appeals' distinction between reversals based on evidentiary weight and reversals based on evidentiary sufficiency had a "questionable historical foundation." *See Tibbs*, 397 So.2d at 1125. Despite this questionable historical foundation, the Florida Supreme Court decided that its 1976 decision reversing Tibbs' convictions was "one of those rare instances in which reversal was based on

evidentiary weight" and the Florida Supreme Court's "improper weighing of the evidence" and that double-jeopardy principles did not prohibit Tibb's retrial. *See Tibbs*, 397 So.2d at 1126-27. The Florida Supreme Court also decided that appellate reversals based on evidentiary weight, "if ever valid in Florida, should . . . be eliminated from Florida law." *See Tibbs*, 397 So.2d at 1125.

On review of the Florida Supreme Court's 1981 decision that double-jeopardy principles did not bar Tibbs' retrial, the United States Supreme Court decided that double-jeopardy principles do not bar a retrial when an appellate court "sits as a 'thirteenth juror'" and "disagrees with the jury's resolution of the conflicting testimony." *See Tibbs*, 457 U.S. at 32, 42-43. In reaching this decision, the United States Supreme Court noted that a reversal based on "insufficiency of the evidence" has the same effect as a jury acquittal "because it means that no rational factfinder could have voted to convict the defendant" and that "the prosecution has failed to produce sufficient evidence to prove its case." *See Tibbs*, 457 U.S. at 41. The United States Supreme Court further stated that an appellate reversal based on evidentiary weight "no more signifies acquittal than does a disagreement among the jurors themselves" and that an "appellate court's disagreement with the jurors' weighing of the evidence does not require the special deference accorded verdicts of acquittal." The Supreme Court wrote:

> As we suggested just last Term, these policies do not have the same force when a judge disagrees with a jury's resolution of conflicting evidence and concludes that a guilty verdict is against the great weight of the evidence . . . . A reversal on this ground, unlike a reversal based on insufficient evidence, does not mean that an acquittal was the only proper verdict. Instead, the appellate court sits as a "thirteenth juror" and disagrees with the jury's resolution of the conflicting testimony. This difference of opinion no more signifies acquittal than does a disagreement among the jurors themselves. A deadlocked jury, we consistently have recognized, does not result in an acquittal barring retrial under the Double Jeopardy Clause. Similarly, an appellate court's disagreement with the jurors' weighing of the evidence does not require the special deference accorded verdicts of acquittal.

*See Tibbs*, 457 U.S. at 42 (citation to authority and footnote omitted).

The United States Supreme Court also examined the Florida Supreme Court's 1976 decision reversing Tibbs' convictions and concluded that a "close reading" of that decision suggested "that the Florida Supreme Court overturned Tibbs' convictions because the evidence, although sufficient to support the jury's verdict, did not fully persuade the court of Tibbs' guilt." *See Tibbs*, 457 U.S. at 46. The United States Supreme Court further noted that any ambiguity in this 1976 Florida Supreme Court decision was resolved in its 1981 decision when the Florida Supreme Court "unequivocally held" that its 1976 decision reversing Tibbs' convictions was "one of those rare instances in which reversal was based on evidentiary weight." *See Tibbs*, 457 U.S. at 47. The United States Supreme Court concluded that under "these circumstances, the Double Jeopardy Clause [did] not bar retrial." *See id*.

We believe that the *Clewis* factual-sufficiency standard with its remedy of a new trial could very well violate double-jeopardy principles under *Tibbs* if factual-sufficiency review is "barely distinguishable" from legal-sufficiency review.[22] With our prior decisions requiring a great amount of appellate deference to a jury's credibility and weight determinations and not permitting appellate

---

[22]

For example, in *Watson*, in which we recognized that factual-sufficiency review is "barely distinguishable" from legal-sufficiency review, we stated that the first ground rule for factual-sufficiency review is that "the appellate court should be mindful that a jury has already passed on the facts, and convicted, and that the court should never order a new trial simply because it disagrees with the verdict, **but only where it seems to the court to represent a manifest injustice** . . . ." *See Watson*, 204 S.W.3d at 414. This, however, arguably describes a situation where "the prosecution has failed to produce sufficient evidence to prove its case" and "an acquittal was the only proper verdict." *See Tibbs*, 457 U.S. at 41-42. Thus described, our factual-sufficiency standard with its remedy of a new trial could violate double-jeopardy principles. *See id*.

courts to sit as "thirteenth jurors" except perhaps to "a very limited degree,"[23] it is questionable whether appellate reversals in Texas under such a factual-sufficiency standard are really reversals based on evidentiary weight (they may actually be reversals based on evidentiary sufficiency). Having decided in Part I of this opinion that the current *Clewis* factual-sufficiency standard is indistinguishable from a *Jackson v. Virginia* legal-sufficiency standard, the remedy of a new trial under this factual-sufficiency standard would violate double-jeopardy principles.

We also note that, were we to decide that reviewing courts must continue to apply a factual-sufficiency standard with its remedy of a new trial in criminal cases, then we must also be prepared to decide that they should apply this standard as "thirteenth jurors" with no deference at all to a jury's credibility and weight determinations in order to avoid these potential federal constitutional double-jeopardy issues. *See also Tibbs*, 457 U.S. at 42. We must also keep in mind that such a nondeferential standard could violate the right to trial by jury under the Texas Constitution. *See Roberts*, 221 S.W.3d at 661-62 n.7; *Clewis*, 922 S.W.2d at 133. Simply retaining and attempting to once again "clarify" the *Clewis* factual-sufficiency standard that is currently indistinguishable from a *Jackson v. Virginia* legal-sufficiency standard would not seem to be an option. Retaining any kind of factual-sufficiency standard in criminal cases would, therefore, still make it necessary for this Court to overrule *Clewis* and abandon its requirement, carried on by our subsequent decisions meant to "clarify" *Clewis*, that reviewing courts must be "appropriately deferential" to a jury's credibility and weight determinations. *See Clewis*, 922 S.W.2d at 133. Thus, the only way to retain a factual-sufficiency standard, which would be meaningfully distinct from a *Jackson v. Virginia* legal-

---

[23] *See Watson*, 204 S.W.3d at 416-17.

sufficiency standard, would be to allow reviewing courts to sit as "thirteenth jurors." However, our factual-sufficiency decisions have consistently declined to do this. *See, e.g., Watson*, 204 S.W.3d at 416 (this Court has never tolerated "even in the 'factual sufficiency' context," an "appellate court simply opting to 'disagree' with the jury's verdict").

We believe that these and the reasons given by the Florida Supreme Court for abandoning its factual-sufficiency standard are good reasons for discarding the confusing and contradictory *Clewis* factual-sufficiency standard. We agree with the Florida Supreme Court that:

> Considerations of policy support, if not dictate, this result. Elimination of [reversals based on evidentiary weight] accords Florida appellate courts their proper role in examining the sufficiency of the evidence, while leaving questions of weight for resolution only before the trier of fact. Eliminating reversals for evidentiary weight will avoid disparate appellate results, or alternatively our having to review appellate reversals based on evidentiary shortcomings to determine whether they were based on sufficiency or on weight. Finally, it will eliminate any temptation appellate tribunals might have to direct a retrial merely by styling reversals as based on "weight" when in fact there is a lack of competent substantial evidence to support the verdict or judgment and the double jeopardy clause should operate to bar retrial.

*See Tibbs*, 397 So.2d at 1125-26.[24]

---

[24] We also note that the Florida Supreme Court's 1981 decision in *Tibbs* examined its 1976 decision in *Tibbs*, other Florida state-court decisions, and the Florida Court of Appeals' decision in determining whether its 1976 decision reversing Tibbs' conviction was a reversal based on evidentiary weight or a reversal based on evidentiary sufficiency. *See Tibbs*, 397 So.2d at 1125-27. The United States Supreme Court examined the Florida Supreme Court's 1976 decision reversing Tibbs' conviction and the Florida Supreme Court's 1981 decision that Tibbs' retrial did not violate double-jeopardy principles in determining that the Florida Supreme Court's 1976 decision reversing Tibbs' conviction was a reversal based on evidentiary weight and not a reversal based on evidentiary sufficiency. *See Tibbs*, 457 U.S. at 46-47. A single *Jackson v. Virginia* legal-sufficiency standard probably would have avoided all of this. *See Tibbs*, 397 So.2d at 1125-26 (eliminating reversals based on evidentiary weight will avoid "having to review appellate reversals based on evidentiary shortcomings to determine whether they were based on sufficiency or on weight").

**III. Is *Clewis* Necessary to Address Some Widespread Criminal Justice Problem That *Jackson v. Virginia* Is Inadequate To Address**

We agree with the discussion in Judge Cochran's dissenting opinion in *Watson* that there are no jurisprudential systemic problems for which the *Jackson v. Virginia* legal-sufficiency standard is inadequate or that can be resolved more satisfactorily in other ways besides retaining *Clewis*' "internally inconsistent" factual-sufficiency standard. *See Watson*, 204 S.W.3d at 448-50 (Cochran, J., dissenting) and at 450 (*Clewis* "has not contributed to the integrity of the appellate review process; it has led to inconsistent results; and it has required numerous, but futile, attempts to clarify its content and application").[25] It bears emphasizing that a rigorous and proper application of the *Jackson v. Virginia* legal-sufficiency standard is as exacting a standard as any factual-sufficiency standard (especially one that is "barely distinguishable" or indistinguishable from a *Jackson v. Virginia* legal-sufficiency standard).[26] A hypothetical that illustrates a proper application of the

---

[25]

In addition, having two evidentiary standards instead of one rigorously and properly applied standard may actually be detrimental. *See* Amanda Peters, *Symposium: Treaties and Domestic Law After* Medellin v. Texas: *Article: The Meaning, Measure, and Misuse of Standards of Review*, 13 Lewis & Clark L. Rev. 233, 255-56 note 3 (Spring 2009) (having two standards of sufficiency review promotes the "boilerplate" recitation of both standards and the rigorous application of neither).

[26]

*See Watson*, 204 S.W.3d at 449 (Cochran, J., dissenting) ("reviewing courts must apply the *Jackson* legal sufficiency standard robustly, taking into account *all* of the evidence, although viewed in the light most favorable to the jury's verdict. If that evidence supports a rational and reasonable finding of guilt beyond a reasonable doubt, it cannot be said that the jury's verdict is manifestly unjust or shocks the conscience of the reviewing court. The verdict is either rational and reasonable or it is not; it cannot be 'semi-rational" and still meet the *Jackson* standard. There is no jurisprudential value in reversing a rational, reasonable verdict and forcing the parties to go back and do it again.") (footnotes omitted and emphasis in original); *Johnson*, 23 S.W.3d at 15 (McCormick, P.J., dissenting) (a properly applied *Jackson v. Virginia* legal-sufficiency standard is much more exacting than *Clewis* claims and when the evidence is sufficient under a properly applied *Jackson v. Virginia* legal-sufficiency standard, it can never be factually insufficient) and at 16 ("when the intermediate appellate courts determine that the evidence is sufficient under *Jackson v. Virginia* but

*Jackson v. Virginia* legal-sufficiency standard is robbery-at-a-convenience-store case:

> The store clerk at trial identifies A as the robber. A properly authenticated surveillance videotape of the event clearly shows that B committed the robbery. But, the jury convicts A. It was within the jury's prerogative to believe the convenience store clerk and disregard the video. But based on *all* the evidence the jury's finding of guilt is not a rational finding.

*See Johnson*, 23 S.W.3d at 15 (McCormick, P.J., dissenting).

**IV. Texas Constitution, Texas Statutes And Case Law Revisited**

Case law makes it fairly clear that, from the time that Texas was a republic in the 1830s and 1840s until the United States Supreme Court decided *Jackson v. Virginia* in 1979, this Court and its predecessors, under what are essentially the same constitutional and statutory provisions that currently exist and existed when *Clewis* was decided in 1996, applied a single and deferential evidentiary-sufficiency standard in criminal cases that essentially was the same standard as the *Jackson v. Virginia* standard.[27] And, until this Court decided *Clewis* in 1996, this Court applied only the *Jackson v. Virginia* evidentiary-sufficiency standard after the United States Supreme Court decided *Jackson*

---

'factually insufficient' under *Clewis* to support a conviction, and remand a case for a new trial, they either will have misapplied *Clewis* (in which case the conviction should have been affirmed) or they will have failed to appreciate that the evidence is also insufficient under *Jackson v. Virginia* (in which case the defendant should have received an acquittal.") (footnotes omitted).

[27] *See Watson*, 204 S.W.3d at 406-07 (acknowledging that early case law never "expressly declared that factual-sufficiency review, *per se*, was authorized in criminal cases") and at 412-14 (also acknowledging that "factual sufficiency went into hiding in the late Forties and early Fifties" and did not begin to reveal itself again until 1994 culminating in the 1996 *Clewis* decision); *Watson*, 204 S.W.3d at 424-32 (Cochran, J., dissenting) (discussing origins of Texas appellate review of evidentiary sufficiency and concluding, "Until *Clewis* in 1996, this Court had consistently used a single standard (although the precise wording varied) and reviewed the evidence in the light most favorable to the factfinder, giving great deference to the jury's credibility and weight determinations.").

*v. Virginia* in 1979.[28]  In 1996, however, Clewis decided that a civil factual-sufficiency standard is also constitutionally and statutorily mandated in criminal cases under state law.[29]

There is very little to add to what this Court has already extensively written on a direct-appeal court's constitutional and statutory authority to apply this factual-sufficiency standard in criminal cases.[30]  Our factual-sufficiency cases decided that Texas direct-appeal courts, which would include this Court in its role as a direct-appeal court in death-penalty cases, are required to apply a civil factual-sufficiency standard under their constitutional grant of general appellate jurisdiction to review "questions of fact,"[31] as also codified in Article 44.25, TEX. CODE CRIM. PROC., which currently

---

[28]

*See Watson*, 204 S.W.3d at 412-14; *Watson*, 204 S.W.3d at 432-33 (Cochran, J., dissenting) (noting that this Court quickly adopted the *Jackson v. Virginia* standard "and adhered to that single, constitutionally mandated standard for seventeen years").

[29]

*Clewis* decided that a direct-appeal court's constitutional and statutory jurisdiction to review "questions of fact" in criminal cases require a direct-appeal court to apply a factual-sufficiency standard to the elements of the offense when properly requested to do so by a convicted defendant. *See Clewis*, 922 S.W.2d at 129 ("*Jackson* standard of review does not satisfy a noncapital defendant's right to an appellate review of fact questions") and at 129-31 ("When their jurisdiction to review fact questions is properly invoked, the courts of appeals cannot ignore constitutional and statutory mandates."); *Stone v. State*, 823 S.W.2d 375, 381 (Tex.App.–Austin 1992, pet. ref'd as untimely filed) (stating that it is "duty-bound to exercise the full extent of the constitutional grant of appellate jurisdiction when requested by the litigants").

[30]

*See Watson*, 204 S.W.3d at 406-414; *Clewis*, 922 S.W.2d at 129-31; *Clewis*, 922 S.W.2d at 136-49 (Clinton, J., concurring); *Bigby v. State*, 892 S.W.2d at 870-75 (Tex.Cr.App. 1992); *Watson*, 204 S.W.3d at 417-20 (Hervey, J., dissenting); *Watson*, 204 S.W.3d at 424-40 (Cochran, J., dissenting); *Clewis*, 922 S.W.2d at 151-55 (McCormick, P.J., dissenting).

[31]

*See* TEX. CONST. Article V, § 5(a) (providing Texas Court of Criminal Appeals with final appellate jurisdiction "with such exceptions and under such regulation as may be provided in this Constitution or as prescribed by law"); TEX. CONST. Article V, § 6(a) (providing Courts of Appeals with appellate jurisdiction "under such restrictions and regulations as may be prescribed by law" and also providing that "the decision of said courts shall be conclusive on all questions of fact brought before them on appeal or error"); *Bigby v. State*, 892 S.W.2d at 871-72 (grant of general appellate

states that direct-appeal courts and this Court "may reverse the judgment in a criminal action, as well upon the law as upon the facts."[32]  Our factual-sufficiency cases further noted that Articles 36.13 and 38.04, TEX. CODE CRIM. PROC., and their statutory predecessors, which "reserve the fact-finding function to the jury,"[33] have "peacefully coexisted with that appellate authority for at least a hundred and twenty-three years" and were meant "merely to allocate the fact-finding function at the trial level and do not purport to affect appellate review."  *See Watson*, 204 S.W.3d at 409.[34]  Also, according to our factual-sufficiency decisions, the "factual conclusivity clause" in Article V, Section 6(a), makes "the resolution of factual issues" by direct-appeal courts conclusive on this Court in nondeath-penalty

---

jurisdiction authorizes review of "questions of fact" and "questions of law"); *Clewis*, 876 S.W.2d at 430 ("general grant of [appellate] jurisdiction includes the power to *review* questions of law *and fact*") (emphasis in original).

[32]

*See Watson*, 204 S.W.3d at 407, 413-14; *Clewis*, 922 S.W.2d at 136-149 (Clinton, J., concurring); *Bigby*, 892 S.W.2d at 870-75.

[33]

*See* Article 36.13 (providing that "[u]nless otherwise provided in this Code, the jury is the exclusive judge of the facts"); Article 38.04 (providing that "jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given the testimony" subject to such exceptions not applicable here).

[34]

This is arguably inconsistent with Tex. R. App. Proc. 21.3(h), which permits a trial court to grant a new trial "when the verdict is contrary to the law and the evidence."  *Compare Tibbs*, 397 So.2d at 1123 (discussing Florida criminal-procedural rule permitting trial court to grant new trial when the verdict is "contrary to law or the weight of the evidence").  In addition, in several decisions meant to "clarify" *Clewis*, this Court has not been consistent on whether Articles 36.13 and 38.04 apply to the appellate process. *See Watson*, 204 S.W.3d at 419 n.12 (Hervey, J., dissenting) (noting that, in 1996 in *Clewis*, this Court stated that these provisions do not apply to the appellate process, but in 1997, in another case, this Court stated that they do apply to the appellate process, and in 2006, in *Watson*, this Court stated that they do not apply to the appellate process).  We note that our decision in *Lancon* recognized that these provisions do apply to the appellate process when *Lancon* cited them for the proposition that in a factual-sufficiency review "the jury is the sole judge of what weight" to give the witness testimony. *See Lancon*, 253 S.W.3d at 705 and at 707 ("jury is the sole judge of a witness's credibility, and the weight to be given the testimony").

cases and also "seems to presuppose that [a direct-appeal] court already possesses the power to conduct factual [sufficiency] review." *See Watson*, 204 S.W.3d at 412, 413-14, *Bigby*, 892 S.W.2d at 872-73.[35]

The dissenters in this Court's factual-sufficiency cases took the position that, even though direct-appeal courts may have the authority to apply this factual-sufficiency standard under their grant of general appellate jurisdiction, when the courts of appeals acquired criminal jurisdiction in 1981, the Legislature, pursuant to its constitutional authority in Article V, Sections 5(a) and 6(a), to regulate appellate jurisdiction, made significant changes to Article 44.25 that were carefully designed to ensure that direct-appeal courts defer to a jury's credibility and weight determinations.[36] The dissenters

---

[35]

It should be noted that this Court has decided that its review of a direct-appeal court's factual-sufficiency decision is limited by the factual-conclusivity clause to determining only whether the direct-appeal court properly applied "rules of law." *See Roberts*, 221 S.W.3d at 662-63; *Bigby*, 892 S.W.2d at 872 n.3. This Court, however, has never decided that the factual-conclusivity clause limits this Court's jurisdiction to review a direct-appeal court's decision on other "questions of fact" or that it makes a direct-appeal court's decision on these "questions of fact" conclusive on this Court. *See, e.g., Carmouche v. State*, 10 S.W.3d 323, 331-33 (Tex.Cr.App. 2000) (this Court overturned direct-appeal court's decision on "question of fact" regarding factual circumstances under which the police claimed that the defendant consented to be searched based on a videotape which contradicted the police version of the critical events). This, of course, is consistent with the plain language of Article 44.25, which states that this Court and the courts of appeals may reverse a judgment "upon the law as upon the facts," and with Section 22.225(a), TEX. GOV'T CODE, which makes a direct-appeal court's judgment "conclusive on the facts" only in civil cases. *See Clewis*, 876 S.W.2d at 430 n.4 (noting that Article 44.25 confers "upon the court of criminal appeals the same fact jurisdiction given to the courts of appeals" but declining to "attribute power to the court of criminal appeals that it has expressly disavowed"); *Watson*, 204 S.W.3d at 437 (Cochran, J., dissenting) ("It would appear that, under article 44.25 (and all of its predecessor statutes), both the courts of appeals and the Court of Criminal Appeals have co-equal jurisdiction to reverse 'on the facts' as well as the law.") and at 439 n.118. It would appear that the Legislature did not intend for a direct-appeal court's decision on a "question of fact" in criminal cases to be conclusive on this Court. *See id*.; *but see Watson*, 204 S.W.3d at 412; *Bigby*, 892 S.W.2d at 872 n.3.

[36]

*See Watson*, 204 S.W.3d at 419-20 (Hervey, J., dissenting); *Clewis*, 922 S.W.2d at 153-54 (McCormick, P.J., dissenting).

considered it significant that in 1981, when Article 44.25 was changed to its current version-permitting a case to be reversed only "upon the law as upon the facts"-its statutory predecessor provided that a case could be reversed "upon the law as upon the facts" and also "because the verdict is contrary to the evidence."[37] Before this, the statutory predecessor to Article 44.25 provided that a case could be reversed "upon the law as upon the facts" and also because "the verdict is contrary to the weight of the evidence."[38] The dissenters believed that the 1981 legislative changes to Article 44.25 indicated a legislative intent that direct-appeal courts should defer to a jury's credibility and weight determinations by expressly withdrawing the authority (that arguably had existed before 1981) of direct-appeal courts to reverse a judgment because the verdict is contrary to the weight of the evidence.[39]

Our decision in *Clewis* to adopt a civil factual-sufficiency standard was meant to "harmonize[] the criminal and civil jurisprudence of this State with regard to appellate review of questions of factual sufficiency." *See Clewis*, 922 S.W.2d at 129. However, when *Clewis* was decided in 1996, the Texas Supreme Court had decided that direct-appeal courts were required to exercise a factual-sufficiency standard with "deferential standards of review." *See Roberts*, 221 S.W.3d at 664 n. 7; *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex. 1988).[40] With its requirement that

---

[37] *See Watson*, 204 S.W.3d at 407; *Bigby*, 892 S.W.2d at 874 n.5.

[38] *See Bigby*, 892 S.W.2d at 874 n.5.

[39] *See Watson*, 204 S.W.3d at 419-20 (Hervey, J., dissenting); *Clewis*, 922 S.W.2d at 153-54 (McCormick, P.J., dissenting).

[40] *See also Jacobs-Cathey Co. v. Cockrum*, 947 S.W.2d 288, 295 (Tex.App.–Waco 1997, writ denied) (when reviewing court reviews factual sufficiency of the evidence in civil cases, "the

**all** of the evidence must be viewed under deferential standards to determine whether a jury's verdict is "manifestly unjust and clearly wrong," this civil factual-sufficiency standard that *Clewis* adopted for criminal cases was essentially the *Jackson v. Virginia* standard.

Thus, when this Court decided *Clewis* in 1996, direct-appeal courts were already harmoniously applying essentially the same standard of factual sufficiency in civil and criminal cases.[41] *Clewis'* main accomplishment, therefore, was to adopt for criminal cases another evidentiary-sufficiency standard that was essentially the *Jackson v. Virginia* standard and that direct-appeal courts had been applying for about 150 years. This, in large part, explains why it was inevitable that these two standards would eventually be recognized as indistinguishable. *See* Part I of this Opinion. The *Jackson v. Virginia* standard is consistent with well-settled evidentiary-sufficiency practice in this State and with a direct-appeal court's constitutional and statutory mandates to review "questions of

---

reviewing court shall neither interfere with the jury's resolution of conflicts in the evidence nor pass on the weight and credibility of the witnesses' testimony" because, among other things, the trier of fact has "the opportunity to observe the demeanor of the witnesses and to weigh their testimony").

[41] We further note that, since our 1996 decision in *Clewis*, the Texas Supreme Court, expressly relying on *Jackson v. Virginia*, modified its traditional appellate standards of "legal" and "factual" sufficiency in civil cases with a clear-and-convincing-evidence heightened burden of proof while also noting that the parameters of these standards "differ to some degree from those adopted by the Texas Court of Criminal Appeals." *See In re J.F.C.*, 96 S.W.3d 256, 264-67 (Tex. 2002); *see also Watson*, 204 S.W.3d at 445-46 n.152 (Cochran, J., dissenting) (setting out verbatim these two standards and noting that "there is barely visible light" between these two standards and wondering "if this two-tier review will long endure in civil cases where the burden of proof is heightened"). These two standards are basically a *Jackson v. Virginia* standard modified to account for the clear-and-convincing-evidence heightened burden of proof. It, therefore, appears that civil appellate standards of "legal" and "factual" sufficiency are moving in the direction of essentially a *Jackson v. Virginia* standard as the burden of proof at trial increases. *See Watson*, 204 S.W.3d at 445-46 n.152 (Cochran, J., dissenting).

law" and "questions of fact."[42]

The issue thus becomes whether direct-appeal courts' constitutional jurisdiction to review "questions of fact," as also codified in Article 44.25 authorizing direct-appeal courts to reverse a judgment "upon the facts," should now be construed for the first time to mandate direct-appeal courts to sit as "thirteenth jurors" in criminal cases contrary to 150 years of practice in civil and criminal cases. We decline to question over 150 years of criminal and civil jurisprudence in this State and construe constitutional and statutory mandates to review "questions of fact" to also require direct-appeal courts to sit as "thirteenth jurors" in criminal cases. *See also Clewis*, 876 S.W.2d at 431 ("Appellate fact jurisdiction . . . should not be confused with the appellate standard of review required to exercise that fact jurisdiction. The state constitution, at most, says that an intermediate appellate court has conclusive fact *jurisdiction* in both civil and criminal cases. It does not purport to set out the *standard of review* required to exercise that fact jurisdiction.") (emphasis in original).[43]

---

[42]

*See Clewis*, 876 S.W.2d at 429 n.1 (discussing the "no evidence" and the "factually insufficient evidence" civil appellate standards of review and the confusion that can occur when "attempting to refer to 'legal sufficiency' in criminal cases") and at 438-39 ("Although characterized as a 'legal sufficiency' review and a 'question of law,' the *Jackson* standard necessarily encompasses a *factual* sufficiency review. If after reviewing the evidence, i.e., the facts, in the light most favorable to the verdict, a rational trier of fact could *not* have found the essential elements of the crime *beyond a reasonable doubt*, then the sufficiency challenge must be sustained and the defendant acquitted.") (emphasis in original); *see also Watson*, 204 S.W.3d at 437 (Cochran, J., dissenting) ("And, of course, both this Court and the courts of appeals have the authority to review 'the facts' as well as the law. If 'the facts' do not establish every element beyond a reasonable doubt, those 'facts' require an appellate court to acquit the defendant under *Jackson*."); *Clewis*, 922 S.W.2d at 157 (McCormick, P.J., dissenting) (when conviction is reversed under *Jackson*, it is reversed "upon the law as upon the facts" after the reviewing court has examined all the evidence, i.e., the facts).

[43]

It is, therefore, unnecessary in this case to revisit the issue of whether legislative activity in 1981 was meant to insure that direct-appeal courts would defer to the jury's credibility and weight determinations and not sit as "thirteenth jurors." *See Watson*, 204 S.W.3d at 419-20 (Hervey, J., dissenting); *Clewis*, 922 S.W.2d at 153-156 (McCormick, P.J., dissenting).

We also note that *Watson* and *Clewis* relied on several cases, most notably the 1883 case of *Walker v. State*,[44] apparently for the proposition that the statutory predecessors to Article 44.25 required factual-sufficiency review that permits direct-appeal courts to sit as "thirteenth jurors." *Walker* is cited in both *Clewis* and *Watson* as a watershed case purportedly recognizing that the statutory predecessors to Article 44.25 required such a review.[45] It is not clear that cases such as *Walker* were applying factual-sufficiency review that permits a direct-appeal court to sit as a "thirteenth juror" in criminal cases since *Walker* "was fully consistent with the *Jackson* standard alone." *See Watson*, 204 S.W.3d at 428 (Cochran, J., dissenting) (*Walker* "was fully consistent with the *Jackson* standard alone" even though it "could be read to support the proposition that the appellate court felt that it had the authority to reverse a jury verdict even though the evidence was 'sufficient.'").[46] We do not believe that cases such as *Walker* clearly support the proposition that Article 44.25 and its statutory predecessors mandate direct-appeal courts to sit as "thirteenth jurors"

---

[44] 14 Tex.Ct.App. 609 (1883).

[45] *See Watson*, 204 S.W.3d at 407-09; *Clewis*, 922 S.W.2d at 138-39 (Clinton, J., concurring); *Watson*, 204 S.W.3d at 426-28 (Cochran, J., dissenting) ("most important case discussing sufficiency of the evidence was the court of appeals's 1883 decision in *Walker*").

[46] Another case cited in *Watson* apparently for the proposition that Article 44.25 and its statutory predecessors require a factual-sufficiency review that permits direct-appeal courts to sit as "thirteenth jurors" is *Green v. State*, 260 S.W. 195 (Tex.Cr.App. 1924). *See Watson*, 204 S.W.3d at 410. *Green*, however, is another case that, like *Walker*, is ambiguous on this point and appears to be really applying a *Jackson v. Virginia* standard. *See Green*, 260 S.W. at 196 ("Though the verdict should not be lightly annulled it is our duty to set it aside and order another trial **when the evidence viewed in its strongest light from the standpoint of the state**, fails to make guilt reasonably certain.") (emphasis supplied).

in criminal cases. *See also Watson*, 204 S.W.3d at 424-32 (Cochran, J., dissenting).[47] In addition, reading *Walker* to mandate direct-appeal courts to sit as "thirteenth jurors" would be inconsistent with the overwhelming weight of civil and criminal authority that direct-appeal courts should review a jury's verdict under deferential standards.

As the Court with final appellate jurisdiction in this State,[48] we decide that the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. All other cases to the contrary, including *Clewis*, are overruled.

**V. Disposition of This Case**

We must now decide how to dispose of this case. In light of our disposition of the State's first ground for review, it is unnecessary to address the State's second ground for review. And having decided that there is no meaningful distinction between a *Clewis* factual-sufficiency standard and a *Jackson v. Virginia* legal-sufficiency standard, we could decide that the court of appeals necessarily found that the evidence is legally insufficient to support appellant's conviction when it decided that

---

[47]

To the extent that *Walker* can be read to support this proposition, we note that *Walker* was relying on that portion of the statutory predecessor to Article 44.25 that permitted a reversal "**for the reason that the verdict is contrary to the weight of the evidence.**" *See Walker*, 14 Tex.Ct.App. at 629 (emphasis supplied). This, however, is the language that the Legislature deleted in 1981 when the courts of appeals acquired criminal jurisdiction. *See Bigby*, 892 S.W.2d at 874 n.5 (discussing history of Article 44.25 and its statutory predecessors).

[48]

*See* Article V, § 5(a) (Court of Criminal Appeals "shall have final appellate jurisdiction coextensive with the limits of the state, and its determinations shall be final, in all criminal cases of whatever grade"); Interpretive Commentary to Article V, § 5(a) ("In defining the jurisdiction of the court of criminal appeals, this section confines its powers to the exercise of appellate jurisdiction in criminal matters exclusively. It thus has no civil jurisdiction, but it is the court of final jurisdiction in criminal matters.").

the evidence is factually insufficient to support appellant's conviction. However, primarily because the "confusing" factual-sufficiency standard may have skewed a rigorous application of the *Jackson v. Virginia* standard by the court of appeals, we believe that it is appropriate to dispose of this case by sending it back to the court of appeals to reconsider the sufficiency of the evidence to support appellant's conviction under a proper application of the *Jackson v. Virginia* standard. *Cf. Tibbs*, 397 So.2d at 1125-16 (abandoning reversals based on weight of the evidence and stating that "[c]ases now pending on appeal in which a court has characterized the reversal as based on evidentiary weight should be reconsidered").

The judgment of the court of appeals is vacated, and the case is remanded there for further proceedings not inconsistent with this opinion.

Hervey, J.

Delivered: October 6, 2010
Publish